UNITED STATES of America and W. Willard Wirtz, Secretary of Labor, United States Department of Labor, Plaintiffs,

v.

GRACE LINE, INC., a Corporation, Defendant.

Civ. No. 913.

United States District Court
S. D. New York.

June 3, 1963.

Robert M. Morgenthau, U. S. Atty., S. Dist. of New York, Louis E. Greco, New York City, and Alan J. Weiss, Washington, D. C., of counsel, for plaintiffs.

Lorenz, Finn & Giardino, New York City, for defendant.

BONSAL, District Judge.

Plaintiffs have moved for a preliminary injunction in connection with an action brought against the defendant Grace Lines for a permanent injunction against violations by defendant of the provisions of § 41 of the Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C. § 941, et seq.) and the Safety and Health Regulations for Longshoring (29 C.F.R.) promulgated thereunder. Jurisdiction is based on § 41(e) of the Act.

The motion for a preliminary injunction is limited to alleged violations by the defendant of § 9.43(e) of the Regulations, which provides as follows:

"The boom or pontoon left in place adjacent to a section through which cargo is being worked shall be lashed, locked or otherwise secured."

On October 16, 1962 an accident occurred on one of defendant's vessels, the S.S. SANTA TERESA, causing the death of one longshoreman and injury to two others. At that time the Bureau of Labor Standards, U. S. Department of Labor, issued notice of violations of § 9.43(e). Thereafter, on January 28, 1963, an agreement was entered into between the Bureau and the defendant in which the defendant admitted the violations of § 9.43(e) on October 16 and consented to an entry of a cease and desist order by the Bureau, which order was duly made and filed on January 30, 1963.

The plaintiffs charge that since the aforesaid agreement the defendant has violated regulation 9.43(e) on three occasions, the first occurring on January 29, 1963 after the execution of the agreement and the day before the cease and desist order, and the second and third occurring on March 15, 1963.

A hearing was held on plaintiff's motion for a preliminary injunction on April 10, 12 and 16, 1963, in the course of which both sides presented witnesses and introduced exhibits.

Before treating the alleged violations, it is appropriate to consider the regulation which the Government contends has been violated by the defendant since the real dispute is the interpretation of that regulation.

The purpose of the regulation is quite clear and is dramatically demonstrated by the accident which occurred on the Grace ship on October 16, 1962. If booms or pontoons are left in place in a working area without being lashed, locked or otherwise secured, the danger exists that during the cargo operations, due either to the action of the boom and its hook or to the carelessness of some longshoreman, they may become displaced and fall into the area where men are working.

The language of the regulation is also clear. "Adjacent to a section" means just what it says. If part of a hatch cover is taken off, the pontoons on either side of the opening are adjacent. A beam is similarly adjacent if it is the first beam on either side of the working area.

The words "lashed, locked or otherwise secured" are equally clear. Secure means "to make fast: tie down". Webster's Third New International Dictionary, p. 2053 (1961). As this is a safety regulation, it quite properly establishes an objective standard, leaving no room for interpretation which might vary depending on the nature of the cargo operations being carried on or the skill or expertise of those in charge. It is designed to protect longshoremen from accidents, including those caused by faulty human judgment.

The standard being objective, must also be absolute, applying with like force to all stevedores, both great and small, and regardless of their safety records or their solicitude for their employees.

Turning to the alleged violations:

### Alleged violation of January 29, 1963.

■ On January 29, 1963 a senior maritime safety consultant, during an official inspection visit on defendant's vessel SANTA TERESA, issued Notice of Violation, No. 1872, charging a violation of § 9.43(e). Service of the Notice was acknowledged by the Grace Line official in charge of cargo operations on Pier 58, North River. The description of the violation was that "the beam in place adjacent to section through which cargo was being discharged was not lock (sic), lashed or otherwise secured, #2 hatch tween deck". There seems no dispute that this reefer beam was not locked, lashed or otherwise secured at the time of the cargo operations. The witnesses for the defendant testified that the reefer beam was large, weighing approximately 2700 lbs., and that it was fitted into sockets on the sides of the coaming. Because of this, the defendant contends the reefer beam was secured. In addition, defendant advances certain subjective arguments, such as a longshoreman would not have worked underneath the beam if he thought it could have been dislodged; the nature and storage of the cargo at the time, the shape of the hook being used, the configuration of the beam itself made it impossible to dislodge it; and finally, that the winch lacked sufficient power to displace the beam.

However, defendant has not met the charge of a violation but has produced evidence to indicate that this violation could not cause injury. This is substituting the defendant's expertise for the clear requirement of the regulation. Accordingly, the Court finds that the defendant violated the regulation as charged in the Notice of Violation of January 29, 1963.

*Alleged violations of March 15, 1963.*

On March 15, 1963 a maritime safety consultant of the Bureau of Labor Standards issued a Notice of two violations on board defendant's vessel the S.S. SANTA SOFIA, which Notice was accepted by the defendant's representative. The violations here were that a pontoon adjacent to a section through which cargo was being worked at #2 hatch was not properly lashed, and that a pontoon at #1 hatch where cargo was being worked was not lashed at all.

■ As to the alleged violation of #2 hatch, the Government's safety consultant testified that there was a single lashing on one side of the pontoon and no lashing at all on the other. Here there is a direct conflict of testimony. Defendant called the foreman at #2 hatch who testified that both sides of the pontoon were adequately secured. For this reason the Court cannot find on this record that the Government has proved the violation as to #2 hatch, but does mention in passing that defendant has again argued that no accident could have happened even if the pontoon had not been secured, which, as previously stated, is no answer to the violation.

■ With respect to the alleged violation on #1 hatch, it is conceded that the adjacent pontoon was not lashed, locked or otherwise secured. Defendant's witnesses testified that two pontoons had been removed from the hatch, that one of these had been placed on top of the adjacent pontoon, and that the upper of the two pontoons was tied to a railing forward of the hatch. Defendant claims that the combined weight of the two pontoons was too heavy for any winchfall to dislodge. Defendant therefore argues that the effect of this was to secure the adjacent pontoon as required by the regulation. The Court thinks otherwise. The regulation requires that the adjacent pontoon itself should have been made fast and tied down. The requirement of § 9.43(e) is not met by depending on the weight of the object to prevent it from being dislodged. Therefore, the Court finds a violation as to the pontoon on hatch #1.

At the time of the presentation of the Order to Show Cause for the preliminary injunction, the Government asked for a temporary restraining order, which was not granted on the understanding that, pending determination of this motion, the defendant would agree with the Government to remove all pontoons and beams on hatches during the time they were worked. At the hearing the Government introduced evidence to show that this agreement was violated by the defendant on April 3, 1963 when, in the course of loading cargo from a canal boat to one of defendant's vessels, only a 20 ft. section of the single, 100 ft. hatch had been opened. The defendant says that the covered part of the hatch was so far away from the working area that it could not be deemed adjacent and therefore there was no possible danger in the operation. It need only be mentioned in passing that here again the defendant is seeking to apply its own views as to what the statute means, which it cannot do.

It should also be said that there is no doubt in the Court's mind as to the good faith of the defendant and that it believed at all times that it was providing for the safety of its men. The difficulty is that it is not for the defendant nor any other stevedore to substitute its judgment as to what a regulation means when the regulation is clear on its face.

The defendant refers to Mitchell v. Pidcock, 299 F.2d 281, 287 (5th Cir. 1962), where the Court said that injunctions will not be issued freely without regard for the facts simply because it is the Government asking for the injunction. However, in that case the injunction was issued and the Court said:

"The injunction subjects the defendants to no penalty, to no hardship. It requires the defendants to do what the Act requires any way— to comply with the law." 299 F.2d. at 287.

In view of the two violations found as a result of the hearing, a preliminary injunction will issue, enjoining the defendant from further violations of Regulation 9.43(e) pending the trial of the permanent injunction.

Settle order on notice.