[No. 38331.    Department Two.    October 6, 1966.]

HIENIE A. VOGEL *et al., Respondents and Cross-appellants,*
v. ALASKA STEAMSHIP COMPANY, *Appellant.*[*]

*Bogle, Gates, Dobrin, Wakefield & Long* and *Robert V. Holland,* for appellant.

*Leonard W. Schroeter* and *Schroeter, Farris, Bangs & Horowitz,* for respondents and cross-appellants.

DONWORTH, J.—Defendant shipowner appeals from a judgment on an adverse jury verdict in an action brought by a longshoreman for personal injuries sustained in a

[*]Reported in 419 P.2d 141.

fall aboard the defendant's vessel. The jury found both negligence on the part of the shipowner and unseaworthiness of the vessel. Plaintiff cross-appeals from a reduction of the damage award by the jury under the rule of comparative negligence in maritime law.

Plaintiff was in the employ of Alaska Terminal and Stevedoring Company, working the night shift as a general stevedore aboard the defendant's vessel, the SS *Galena*. Plaintiff's gang was working the No. 2 hatch. Several times during the course of his evening's work, plaintiff had crossed the covered hatch, using a ledge on the starboard (offshore) side to step down to the deck. Up to the time that plaintiff's gang left for the usual 1-hour lunch break, there had been no obstructions, cables, cords or other hazards on or around the ledge.

On returning from lunch, plaintiff again crossed the hatch, and, in stepping down onto the ledge, tripped on a heavy black electrical cord, which had been placed on the ledge during the lunch break. The cord was for use in connecting electrically-operated refrigeration vans. No vans were in sight at the time of the fall. Plaintiff's witnesses testified that such cords are not normally laid until refrigeration vans are brought on board, and even when connected to the vans the cords are not usually placed on the ledge of the hatch. Plaintiff contends that the cord could not have been seen by one standing on the hatch, and, further, that the ledge was in a shadow and was not adequately illuminated. Both the ledge and the cord were black.

Plaintiff, over defendant's objection, introduced in evidence certain excerpts from the "Safety and Health Regulations for Longshoring," promulgated by the Secretary of Labor pursuant to 33 U.S.C.A. 941, *et seq.* The admission of these excerpts, the court's instruction regarding their consideration by the jury, and the failure of the trial court to give the defendant's proposed precautionary instruction form the basis for three of the defendant's four assignments of error.

The pertinent provisions of the regulation[1] are as follows:

(a) Weather deck walking and working areas shall be kept reasonably clear of lines, bridles, dunnage and all other loose tripping or stumbling hazards.

(b) Gear or equipment, when not in use, shall be removed from the immediate work areas, or shall be so placed as not to present a hazard. 29 C.F.R. § 1504.91.

(a) All walking and working areas shall be adequately illuminated. 29 C.F.R. § 1504.92.

Defendant specifically contends that the above cited provisions are inapplicable to shipowners who are not also employers of the longshoremen who are working aboard their ships. He bases this contention on § 1504.2 of the regulations, which provides, in part:

(b) It is not the intent of the regulations of this part to place additional responsibilities or duties on owners, operators, agents or masters of vessels unless such persons are acting as employers, nor is it the intent of these regulations to relieve such owners, operators, agents or masters of vessels from responsibilities or duties now placed upon them by law, regulation or custom.

Substantially, this same argument was advanced by the defendant in *Provenza v. American Export Lines, Inc.*, 324 F.2d 660, *cert. denied* 376 U. S. 952, 11 L. Ed. 2d 971, 84 Sup. Ct. 970 (1963). That case involved a suit by a longshoreman against a shipowner for injuries which occurred during loading operations. The shipowner, in turn, filed a third-party complaint against the stevedore employer of plaintiff. The United States District Court for the District of Maryland refused to permit the admission in evidence of these same regulations. On appeal, the United States Court of Appeals for the Fourth Circuit held that this refusal was error, and that the injured longshoreman was entitled to have put before the jury the standards set up by these regulations.

In answer to the argument of defendant in that case, the court, in *Provenza,* stated, at 665:

[1]Applicable provisions of the regulations are cited by the parties as § 9.91(a) and (b), § 9.92(a) and § 9.92(b). These provisions were redesignated at 28 F. R. 1634, February 21, 1963. Throughout this opinion, the current designations will be used.

While the definition of seaworthiness laid down by the court was correct as a general statement of law, we think the plaintiff was entitled to have put before the jury the definite standards set up in the regulations promulgated by the Secretary of Labor defining reasonably safe conditions in the exact area involved in this case. *Furthermore, we are also forced to the conclusion that in the area covered by the regulations their violation would render the ship unseaworthy, and if such unseaworthiness was the proximate cause of the plaintiff's injury, it would also render the defendant shipowner liable.* It follows, of course, that if the jury should find that the stevedore had violated the regulations such conduct could also constitute negligence. If in turn this negligent conduct of the stevedore were known, or by the exercise of reasonable care should have been known to the shipowner, and such negligence of the shipowner was a proximate cause of the plaintiff's injury, then he too would be liable to the plaintiff on the additional grounds of negligence.

Prior to the enactment of 33 U.S.C.A. § 941 and the promulgations of the regulations thereunder what constituted negligence or unseaworthiness was to be determined by the jury under the definitions laid down by the courts. Now, *with respect to longshoring, the statute law of the United States has laid down definite standards,* and we think the plaintiff longshoreman is entitled to have those standards applied to both the defendants in this case.

. . . .

The regulation casts upon the shipowner no new duty nor does it relieve him of any pre-existing duty. Now, as before the regulation was promulgated, it is incumbent on him to supply a seaworthy ship. Now, as before, if the ship becomes unseaworthy through the act of the stevedore or anyone else, and this condition is the proximate cause of an injury, the shipowner is liable. The legal duty is the same. *All that the regulation does is to define how this well-established duty shall be discharged in particular circumstances by the stevedore who has undertaken to perform the shipowner's nondelegable duty:* [citing provision]. *It prescribes a standard of safety, not a new duty.* Nothing in the regulation forbids its being mentioned to the jury. (Italics ours.)

Apparently recognizing the aptness of the *Provenza*

ruling, the defendant here argues that the decision is not binding on this court, but merely sets forth a rule of evidence applicable to lower federal courts in the fourth circuit. He cites the familiar conflicts-of-law rule that the law of the forum determines the admissibility of a particular piece of evidence. Even if we concede the correctness of defendant's position on this point, we must still look to the general maritime law to determine the interpretation to be given this regulation in its application to an action of admiralty cognizance. *Scudero v. Todd Shipyards Corp.,* 63 Wn.2d 46, 385 P.2d 551 (1963).

■ The regulations here in question prescribe certain minimum standards of safety. The 1958 amendment to the Longshoremen's and Harbor Workers' Compensation Act was Congress' effort ". . . to provide for establishing and enforcing an effective safety program in . . . [the] hazardous occupation [of longshoring]. . . ."[2] Conditions existing in violation of the provisions of these regulations are deemed unsafe, the regulations having established objective standards. *United States v. Grace Line, Inc.,* 221 F. Supp. 339 (1963). In this latter case, an injunction was granted against a shipowner's violation of these same rules and regulations in an action brought by the federal government. *Provenza* makes the regulations applicable to a nonemployer shipowner.

Defendant contends that this regulation would not be admissible under our rules of evidence. With this argument we cannot agree.

The present case involves a maritime tort. An injury was suffered by plaintiff longshoreman aboard defendant's vessel in navigable waters. In respect to the regulations as applied to the facts of this case, we adopt the reasoning of *Provenza, supra,* that:

---

[2]The House Report accompanying the 1958 amendment to the Longshoremen's and Harbor Workers' Compensation Act points out that stevedoring is the most hazardous of all industries which report their experience to the Bureau of Labor Statistics, having an injury frequency rate of seven times that of manufacturing. (1958 U. S. Code and Cong. News, p. 3843.)

The owner's duty does not stem from the regulation, but the regulation may be shown just like other evidence to indicate that a certain practice is safe or unsafe. While such evidence is not conclusive, it is relevant.

This holding does not conflict with other decisions in this jurisdiction regarding other administrative regulations having a different nature or effect, or those relating to other industries with less potential hazard or without the characteristic background and history of the maritime law, or without the unique doctrine of seaworthiness, such as *Hartman v. Port of Seattle*, 63 Wn.2d 879, 389 P.2d 669 (1964), cited by defendant.

It should be further noted that the substance of these regulations was paraphrased by many of the witnesses who testified at the trial. They were referred to as safety standards, though such standards were not identified as having been adopted by the Secretary of Labor pursuant to congressional authority. We are convinced that, under the circumstances, their admission in evidence did not constitute prejudicial error. See *Scudero v. Todd Shipyards Corp., supra.*

The court gave the following instruction, No. 7½, regarding regulations:

Certain provisions of Federal regulations respecting safety for longshoremen have been admitted as an exhibit in this case. These regulations prescribed a standard of safety for longshoremen working aboard a vessel, and you can consider them on both the issues of seaworthiness and negligence along with all the other evidence in this case to determine whether certain working conditions were safe or unsafe.

Defendant excepted to and assigns error to the giving of this instruction.

■ In view of the court's ruling on the admissibility of the above quoted regulation, instruction No. 7½, given by the trial court was not objectionable. The regulations were admissible and were proper to be considered at least on the issue of seaworthiness. A finding of unseaworthiness renders the defendant shipowner absolutely liable for in-

juries resulting from such condition. *Seas Shipping Co., Inc. v. Sieracki,* 328 U. S. 85, 90 L. Ed. 1099, 66 Sup. Ct. 872 (1946); *Mahnich v. Southern S.S. Co.,* 321 U. S. 96, 88 L. Ed. 561, 64 Sup. Ct. 455 (1944). The jury in this case found the vessel to be unseaworthy. Hence no prejudice could have resulted from the court's giving instruction No. 7½.

Defendant further urges that, if this court finds that the ruling of the trial court was correct with respect to admitting the regulations in evidence, then the trial court's refusal to give the defendant's proposed precautionary instruction regarding them constitutes reversible error. The proposed instruction, No. 9, reads:

> These Federal regulations, as promulgated, are not applicable to the defendant in this case and are therefore not binding upon it. You are entitled to consider them, however, along with all of the other evidence in this case, to determine whether certain practices are safe or unsafe.

We feel that defendant's proposed instruction would have been misleading to the jury. The regulations are "applicable" to the defendant shipowner in that they give expression to the minimum standards which must be met in order to render conditions aboard the vessel safe, and hence seaworthy.

The trial court need never give a requested instruction that is erroneous in any respect. *Bloomquist v. Buffelen Mfg. Co.,* 47 Wn.2d 828, 289 P.2d 1041 (1955); *Bayers v. Barry,* 114 Wash. 252, 194 Pac. 993 (1921). Therefore, the trial court did not err in refusing to give the proposed precautionary instruction No. 9.

Defendant's fourth assignment of error relates to the trial court's refusal to grant defendant's motion for a new trial based on the purported excessiveness of the verdict.

The evidence shows that plaintiff sustained an injury to his ribs and his right (major) hand in the fall. Between July 15, 1961 (the date of the accident) and October 27, 1964 (the date of the trial) he was hospitalized six times and had undergone four major operations on his hand. Medical care was continuous to the time of the trial, which took place more than 3 years after the injury, during which

time the plaintiff was able to work very little, and any work he did, on the few light jobs he could find, was very painful.

Plaintiff developed a condition known as carpal tunnel syndrome, which caused extreme nerve pain and disability in his right hand. None of the surgery corrected the condition due to the repeated formation of scar tissue. Neither surgery nor injections were successful in halting formation of the scar tissue. The jury was entitled to believe the testimony of plaintiff's medical witnesses to the effect that he has a permanent disability and suffers from permanent pain that is objective and not curable. Plaintiff will, it is conceded by defendant, require future medical care.

The jury was further entitled to believe from the testimony of plaintiff's former coworkers that he can no longer continue as an active longshoreman due to his disabled right hand. There was testimony to the effect that an attempt by the plaintiff to work as a longshoreman might endanger both himself and his coworkers.

Plaintiff, at the time of the trial, was nearly 59 years old. His life expectancy was nearly 17 years. He had been a registered longshoreman for many years, and had only a grammar school education. The jury assessed damages at $91,591.72.

Defendant concedes that the past medical costs incurred by plaintiff total $2,272.41, and that his future medical costs will be at least $850. Defendant further concedes that plaintiff's lost wages up to the date of trial, based on the testimony of plaintiff's witnesses, amounted to $18,376. Thus a total of at least $21,498.41 is, in effect, agreed to by the parties for these items of damage.

The principal basis of disagreement centers on his future loss of earnings. Defendant argues that the loss will total $25,000. Thomas Bleakney, an actuary, calculated the present value of the plaintiff's impairment of earning capacity at between $40,708 and $58,792. This witness estimated the present value of pension benefits which have been or may be lost to plaintiff as being $7,684. The jury had the figures before them, as well as the calculations upon which

they were based, and could weigh all the testimony in reaching their conclusion as to the amount to be awarded plaintiff in their verdict. They were further entitled, under the instructions of the trial court, to consider possible future pain and suffering.

The determination of the amount of damages to be awarded is within the province of the jury. It rests in their discretion. Unless the amount is so excessive as to indicate passion or prejudice or to shock this court's sense of justice, the finding of the jury will not be disturbed. *Tolli v. School Dist. No. 267 of Whitman Cy.*, 66 Wn.2d 494, 403 P.2d 356 (1965). No passion or prejudice is claimed by defendant, and we are not convinced that the damages awarded were so disproportionate as to call for reversal. We shall not presume to substitute our judgment for that of the trial court and jury in such a case. *Sherman v. Seattle,* 57 Wn.2d 233, 356 P.2d 316 (1960). The court did not err in refusing to grant a new trial.

The jury found that plaintiff was contributorily negligent[3] and, under the rules peculiar to maritime law, reduced the damage award by 15 per cent, being the amount by which they found plaintiff's contributory negligence contributed to his injury. Plaintiff has cross-appealed, contending that the submission of the issue of contributory negligence to the jury was error. He argues that the trial court should have directed a verdict for plaintiff on the issue of liability. We do not agree. There was evidence which, if believed by the jury, would support their finding.

The evidence regarding one's ability to see the black cord lying on the black ledge of the hatch was very much in dispute. Plaintiff contended that the evidence showed that the ledge was dimly lighted or in shadows. There was thus raised the question of whether, under such circumstances, plaintiff exercised due care in watching where he was

---

[3]The record submitted to this court did not contain a completed copy of the jury's answers to the interrogatories submitted to them by trial court. The interrogatories and the jury's answers thereto are, however, quoted in respondent's brief. Defendant has not challenged their accuracy. We shall, therefore, consider them as correctly stated.

stepping. The jury was entitled to find that he had not. The fact that plaintiff never before bothered to look before stepping on the ledge would not make his failure less culpable. A negligent act, no matter how often repeated, is still negligent. We shall not disturb the jury's finding on the 15 per cent reduction in the total amount of damages sustained by him, since there was sufficient evidence to support it. By reducing the total damages awarded by 15 per cent, the final result was a verdict for plaintiff in the amount of $77,852.90. Judgment was entered for plaintiff in this amount.

The judgment of the trial court is affirmed, both on the appeal and on the cross-appeal.

ROSELLINI, C. J., FINLEY and WEAVER, JJ., and BARNETT, J. Pro Tem., concur.