Henry PHIPPS, Libellant-Appellant,

v.

The S.S. SANTA MARIA, etc., et al., Respondents-Appellees.

No. 26811

Summary Calendar.

United States Court of Appeals
Fifth Circuit.

Nov. 19, 1969.

**616**

James A. Wysocki, John R. Martzell, New Orleans, La., for libellant-appellant.

T. C. W. Ellis, Charles G. Merritt, Edward P. Jerry, New Orleans, La., for respondents-appellees.

Before JOHN R. BROWN, Chief Judge, and THORNBERRY and MORGAN, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Here the claimant, a longshoreman at the Port of New Orleans, was injured while working in the lower hold of S.S. Santa Maria while she was being loaded with bulk grain.[1] The hatch boards had been removed leaving the hatch beams of the tween deck exposed. A mechanical grain trimmer was lowered and raised through these spaces from time to time as loading went on. Throughout the ship the locking devices to secure the hatch beams in place were rusted, defec-tive and unusable. Consequently, the stevedore instructed the longshore employees to lash the beams with ropes. Claimant worked in the lower hold even though, as found by the Trial Court, he "knew that the tween deck beams were neither locked nor lashed—[and] that unlashed beams overhead created a substantial hazard to those working below." While the grain trimmer was being maneuvered into position a momentarily unattended but defective winch "walked up" causing the trimmer to lift one of the beams out of its socket so that it fell into the hold.

■ The District Court found claimant had suffered $11,255.14 in damages as a result of the unseaworthiness of S.S. Santa Maria from dual causes. "An unseaworthy condition was created—by the unsecured hatch beams, as well as by the malfunctioning of the winch."[2] However, this was reduced by 50 percent because of the additional finding that claimant was 50 percent contributorily negligent.

■ Although, as we did in our recent decision in Manning v. M/V "Sea Road", 5 Cir., 1969, 417 F.2d 603 [Oct. 16, 1969], we reject claimant's contention that the comparative fault doctrine has no place in a case where the unseaworthiness is the result of the violation of the Safety and Health Regulations for Longshoring, 29 C.F.R. § 1504.1 et seq., we believe that it is appropriate to remand this case for reconsideration by the Trial Court in the light of the principles there discussed. Under *Manning* the unseaworthiness of S.S. Santa Maria was the *per se* result of the violations of the Safety and Health Regulations for Longshoring as they re-

---

1. Pursuant to Rule 18 of the rules of this court, we have concluded on the merits that this case is of such character as not to justify oral argument and have directed the clerk to place the case on the Summary Calendar and to notify the parties in writing. See Huth v. Southern Pac. Co., 5 Cir., 1969, 417 F.2d 526; Murphy v. Houma Well Service, 5 Cir., 1969, 409 F.2d 804, Part I.

2. The findings continued:
   "The combination of the unsecured beams and the 'walking' winch deprived libelant of a reasonably safe place in which to work. Had the beams been lashed or locked and/or winch been equipped with a brake or been so designed as not to be affected by the operation of the winches at the other end of the vessel, this accident would not have occurred.

late to hatch beams [3] and cargo winches.[4] 29 C.F.R. §§ 1504.43, 1504.53. See *Manning, supra*; Marshall v. Isthmian Lines, Inc., 5 Cir., 1964, 334 F.2d 131, 1964 A.M.C. 1686.

As in *Manning* it would in these circumstances defeat the congressional objective of achieving industrial safety to permit the victim of flagrant violation as to beam locks (note 3, *supra*) to bear more of a responsibility for this than the shipowner. The maximum contributory negligence attributable to claimant on this score would therefore be 50 percent. But the present result of a 50/50 decree ignores altogether the other ground of the defective winch.[5] This violation was equally flagrant but completely unknown by or attributable to the victim.

Of course, assessment of damages under comparative fault is something more delicate (and frequently more enigmatic) than matching element by element the victim's and the wrongdoer's derelictions. But the strong congressional policy which gives effectiveness to statutory regulations through civil sanctions requires that every violation producing *per se* unseaworthiness for which the shipowner is responsible has to be carefully assayed. We would not undertake to say either in dollars or percentages what that may or must be here. That is the role initially of the Trial Judge.

As we are left in doubt that these principles subsequently articulated were adequately assessed, remand is not a matter of holding the mixed law-fact finding of 50 percent to be clearly erroneous, F.R.Civ.P. 52(a).[6] Rather, it is just to assure that proper legal standards are followed. We therefore conclude a remand is appropriate for reconsideration of this comparative fault, mitigation of damage phase on either the present record or as supplemented by the parties under the direction of the Trial Judge.

Remanded.

3. 29 C.F.R. § 1504.43(e) provides:

"(e) Any beam or pontoon left in place adjacent to a section through which cargo, dunnage, equipment, or any other material is being worked, shall be lashed, locked, or otherwise secured so that it cannot be displaced by accident. All portable, manually handled hatch covers, including those bound together to make a larger cover, shall be removed from any working section."

4. 29 C.F.R. § 1504.43(a) provides:

"(a) *General.* (1) When moving parts of winches or other deck machinery present a hazard, they shall be guarded.

(2). Winches shall not be used if control levers operate with excessive friction or excessive play.

(3)· Double gear winches or other winches equipped with a clutch shall not be used unless a positive means of locking the gear shift is provided.

(4) When changing on a two gear winch, there shall be no load other than the fall and cargo hook assembly on the winch.

(5) Any defect or malfunction of winches shall be reported immediately to the officer in charge of the vessel."
See also C.F.R. § 1504.53(b) (4):
"When winches are left unattended, control levers shall be secured in the neutral position."

5. Actually the Trial Judge in his opinion, findings and conclusions based unseaworthiness for defective winches wholly on general maritime principles. Unlike reference to the specific regulation, 29 C.F.R. § 1504.43(e), on hatch beams (note 3, *supra*) he made no mention of those pertaining to winches (note 4, *supra*).

6. See United States v. Singer Mfg. Co., 1963, 374 U.S. 174 (note 9, p. 194), 83 S.Ct. 1773, 1784, 10 L.Ed.2d 823, 838; Fulton National Bank v. Tate, 5 Cir., 1966, 363 F.2d 562; Fromberg, Inc. v. Thornhill, 5 Cir., 1963, 315 F.2d 407; Davis v. Parkhill-Goodloe Co., 5 Cir., 1962, 302 F.2d 489; MacMullen v. South Carolina Elec. and Gas Co., 4 Cir., 1963, 312 F.2d 662, cert. denied, 373 U.S. 912, 83 S.Ct. 1302, 10 L.Ed.2d 413.