[No. 119-41265-2.    Division Two.    April 28, 1970.]

JOSEPH E. CRESAP, *Appellant*, v. PACIFIC INLAND NAVIGATION COMPANY, *Respondent*.

*C. Brent Nevin, Pozzi, Wilson & Atchison*, and *Raymond J. Conboy*, for appellant.

*Grey, Frederickson & Heath, Nathan J. Heath*, and *Blair, Schaefer, Hutchison & Wynne*, for respondent.

APPEAL PENDING IN SUPREME COURT

ARMSTRONG, C. J.—Plaintiff Joseph E. Cresap, a longshoreman, appeals from a judgment based upon a jury verdict for defendant Pacific Inland Navigation Company. Plaintiff brought this action in admiralty to recover damages which he suffered while engaged in unloading a barge

operated by defendant shipping company. The complaint alleged unseaworthiness and negligence but at the commencement of the trial plaintiff withdrew the allegation of negligence and relied solely on unseaworthiness.

On February 8, 1965, plaintiff was working for Archer Daniels Midland, a master stevedore, as a hold man in unloading grain from defendant's barge. The duties of a hold man on a grain barge include opening the hatch, going down a ladder into the hold of the barge and operating vacuum hoses of the "sucker machine". Six hoses are dropped into the grain which is vacuumed into the hoses by a fan on the dock and deposited into a conveyor system situated on the dock. The barge has a number of hatches on the top deck. The hatches open into holds or interior compartments of the barge. The ladder used by the longshoremen to enter and leave the holds was one of two they customarily used for this purpose when working for the stevedore.

Plaintiff was injured at approximately 2:45 p.m. as he was descending a ladder from the hatch on the top deck to the deck of a hold. The ladder was the means used by the plaintiff and seven other members of his work gang to get in and out of the hold for work operations, lunch and coffee breaks. Plaintiff's gang had just finished their afternoon coffee break. The other members of the gang, except for the hatch tender, were already in the hold when the accident occurred.

The hold into which plaintiff was descending was approximately 10 or 11 feet deep and its deck was made of steel. Plaintiff described the deck where the ladder stood as "so shiny, steel, slick". He said the weather was "a bit damp". The ladder was made of wood. The bottom of the ladder rested on the steel deck of the hold which had been cleared of cargo except for scattered grain. There were no rubber footings on the ladder. The top of the ladder extended approximately a foot above the hatch. A single length of rope was tied near the top and to one side of the ladder; the rope was tied to a "bit" welded to the top deck.

In descending the ladder the plaintiff stated that he was facing it. He described his fall in the following manner:

As I started down the ladder, I got to a point about where my head was even with the deck of the barge. That is the top of the deck, and all at once the bottom of the ladder went sideways to the right and the weight of me tried to pull it back; the ladder rolled over and I fell off.

One of plaintiff's fellow workers, Fred A. Ehlke, testified that he did not see plaintiff fall but heard a thump and turned around to see plaintiff lying at the foot of the ladder. He described the ladder as "sitting on the angled position . . . tied to the top of the hatch opening and the lower part of the ladder was loose on the deck and it had been shifted over where he [plaintiff] was lying".

Plaintiff received serious head and back injuries as a result of the fall. He was removed from the hold through a side door which entered upon an adjacent hold containing grain, some 3 feet deep.

Plaintiff makes six assignments of error in seeking the reversal of the judgment and the granting of a new trial. Four primary issues are presented.

■ In considering the rights and liabilities arising from injury to a longshoreman working on board a ship in navigable waters, we are governed by federal law as to the substantive issues in the case. The rights and liabilities of the parties are within the full reach of the admiralty jurisdiction and measured by the standards of maritime law. *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 90 L. Ed. 1099, 66 S. Ct. 872 (1946); *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 98 L. Ed. 143, 74 S. Ct. 202 (1953); *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 3 L. Ed. 2d 550, 79 S. Ct. 406 (1959). This rule is applicable even though plaintiff pursues his remedy in a state court. *Bishop v. Alaska S.S. Co.*, 66 Wn.2d 704, 404 P.2d 990 (1965); 2 Am. Jur. *Admiralty* § 113 (1962).

The first issue presented is whether there was sufficient evidence to support submitting the issue of comparative

contributory negligence to the jury. The jury was correctly instructed on the issue.[1] Plaintiff contends that there was no positive or affirmative evidence of contributory negligence to support this issue. He argues that it was error for the court to instruct the jury on this issue and that his motion to withdraw the issue of contributory negligence from the consideration of the jury should have been granted.

As admitted in defendant's brief, plaintiff was the only witness who actually saw the fall and knew what happened. We repeat his testimony relating to the fall to demonstrate the contention of the defendant that it justifies an inference that he shifted the position of the ladder by throwing his weight to one side:

As I started down the ladder, I got to a point about where my head was even with the deck of the barge. That is the top of the deck, and all at once the bottom of the ladder went sideways to the right *and the weight of*

---

[1]
"INSTRUCTION No. 14

"The defendant has alleged that the plaintiff was guilty of contributory negligence.

"In general, it is the duty of every person in our society to use reasonable care in order to avoid damage or injury to himself in any situation in which it could reasonably be anticipated that a failure to use such care might result in such damage or injury.

"Reasonable care is that care which persons of ordinary prudence exercise in the management of their own affairs, in order to avoid injury to themselves.

"Contributory negligence, therefore, is the doing of some act which a reasonably prudent person would not do, or the failure to do something which a reasonably prudent person would do, under the same or similar circumstances, to avoid damage or injury to himself.

"INSTRUCTION No. 14-A

"If you find for the plaintiff but further find that the plaintiff himself was guilty of some contributory negligence and that such negligence was a contributing cause of any injuries and damage which plaintiff may have sustained, then you must reduce the amount of damages which you have found in proportion to the negligence of the plaintiff. For example, if you find that the plaintiff was negligent and such negligence was 10, 50 or 90 per cent responsible for his accident, then you will reduce any award by such percentage whatever it may be."

*me tried to pull it back;* the ladder rolled over and I fell off.

(Italics ours.)

One inference would be that as the ladder slipped the plaintiff, either by reflex action or as a result of the normal dynamics of the situation, applied his weight against it. Another possible inference would be that as he felt the ladder slipping he consciously applied his weight to the ladder in an attempt to shift its position and prevent it from slipping further or shift it back into its normal position. It is more likely that plaintiff meant "the weight of me *tended* to pull it back".

We do not believe that defendant has sustained the burden of proving contributory negligence under any possible interpretation of the brief description of the accident related by plaintiff. The ladder "went sideways to the right" before the shifting of his body weight. There was no substantial evidence, or inference from the evidence, that he did not act as a reasonably careful person under the circumstances.

There is, however, another reason why contributory negligence became an issue in this case. Dr. Hutt, plaintiff's attending physician, saw the plaintiff shortly after the injury at the hospital. He estimated the time at 3 to 4 p.m. The following testimony of Dr. Hutt was presented:

Q. Were you able to obtain any kind of history at that time as to what happened? A. Yes. Q. What was that? A. That he fell from — was sitting on a ladder directing the loading of the hold of a ship and he fell and injured himself.

Fred Ehlke stated that the plaintiff was unconscious when he found him lying on the floor. The hospital records reveal that the history on admittance was stated as "Fell from a ladder to a steel decking about 7 feet. Was unconscious—when first adm.—does not remember what happened to him—after about 5 min. he can remember starting down the ladder . . ." Dr. Hutt found considerable hemorrhage behind the right eardrum and diagnosed a moder-

ate cerebral concussion. When asked if there was a history of unconsciousness, Dr. Hutt answered "Yes".

It will be noted that Dr. Hutt did not specifically state that he received the history of the accident from the plaintiff. An inference could be drawn, however, that he did. The fact that plaintiff was unconscious on arrival at the hospital and the first history given on arrival would affect the weight of Dr. Hutt's testimony.

We find no error in submitting the issue of contributory negligence.

■ Plaintiff next raises the issue of whether the trial court erred in refusing to take judicial notice of federal regulations dealing with Safety and Health Regulations for Longshoring, 29 C.F.R. § 1504 (1965) (Code of Federal Regulations). Defendant proposed the following instruction, which incorporated the pertinent portions of the regulations for which he sought judicial notice:

> You are instructed that there are Federal regulations dealing with "Safety and Health Regulations for Longshoring". (29 CFR 1504). Those regulations provide in part as follows: "1504.25 (A). There shall be at least one safe and accessible ladder for each gang working in a hatch . . ."
> (C) Straight ladders of adequate strength and suitably secured against shifting or slipping shall be provided as necessary where fixed hold ladders do not meet the requirements of Paragraph (A) of this section.

Plaintiff contends that the federal regulation was the controlling standard on the question of seaworthiness and should have been judicially noticed. Plaintiff argues that a violation of the safety and health regulations is unseaworthiness per se and cites as supporting and controlling authority *Venable v. A/S Det Forenede Dampskibsselskab*, 399 F.2d 347 (4th Cir. 1968). *Venable* expands and strengthens the effect of the longshoring safety regulations which were considered in *Provenza v. American Export Lines, Inc.*, 324 F.2d 660, 666 (4th Cir. 1963), which states:

> The owner's duty [to furnish a seaworthy ship] does not stem from the regulation, but the regulation may be

shown just like other evidence to indicate that a certain practice is safe or unsafe. While such evidence is not conclusive, it is relevant.

The Washington Supreme Court followed the Provenza rule in *Vogel v. Alaska S.S. Co.*, 69 Wn.2d 497, 419 P.2d 141 (1966). Plaintiff contends that the next logical step would be to adopt the rule of *Venable* which held that a violation of longshoring safety regulations renders a ship unseaworthy and if such unseaworthiness is the proximate cause of the longshoreman's injury, it renders the shipowner liable.

Plaintiff effectively argues that since *Venable* is a later case from the same circuit as *Provenza*, which was approved by our Supreme Court in *Vogel*, we should accept the Venable rule that a violation of the longshoreman safety regulations constitutes unseaworthiness per se. It would therefore follow that it would be error to refuse to take judicial notice of the applicable federal regulations.

In his oral argument, counsel for defendant shipping company, with admirable candor, stated: "I must confess that I possibly led the trial court into some technical error in not taking judicial notice of the regulations".

Defendant contends, however, that if the court was in error in refusing to take judicial notice of the Safety and Health Regulations for Longshoring, such error was harmless because instructions 9 and 11 do not deviate from the standards set forth in the regulations. The following instructions were given:

### INSTRUCTION No. 9

The plaintiff contends that the barge owned and operated by the defendant, was unseaworthy in that the ladder on which the plaintiff was attempting to walk on and use was not properly secured and that there was no means provided to properly secure said ladder. If you find that the plaintiff was descending a ladder and that it was not properly secured and for that reason gavé way and caused injury to the plaintiff, and if you further find that this condition constituted unseaworthiness as I have defined that term for you, then your verdict must be for the plaintiff. . . .

INSTRUCTION No. 11

I instruct you that the duty to maintain the barge and its appurtenances in a seaworthy condition extends to ladders used aboard the vessel. A ladder, even though structurally sound, is unseaworthy if it is unsecured aboard the vessel in such a way as not to be reasonably suitable and fit to be used for the purpose or use for which provided or intended.

Pursuant to the passage of the Federal Register Act, 49 Stat. 502, 44 U.S.C. § 1502, federal regulations are collected in a single text which is readily available to the public as well as to lawyers and judges. In 9 J. Wigmore, Evidence § 2572 (3d 1940), n. 16 at 553-54, the question is posed: "Since the advent of the *Federal Register*, with its strict rules for publication of executive regulations, why may not all such regulations be capable of judicial notice when there published?" We are convinced that in admiralty law they can and should be judicially noticed when they are directly applicable to the issue in the case.

Under the title of "Explanation", as a preface to the Code of Federal Regulations, we find a statement which, while not controlling, does demonstrate the trend we see in the decisions:

The contents of the Federal Register and of the Code of Federal Regulations are by law prima facie evidence of the text of the original documents and are required to be judicially noticed (49 Stat. 502, 67 Stat. 388; 44 U.S.C. 307 [now 1507], 311 [now 1510]).

On retrial of this case plaintiff is entitled to have placed before the jury the safety regulation proposed from the Safety and Health Regulations for Longshoring which specifically provided that there should be a ladder "suitably secured against shifting and slipping". He is further entitled to an instruction that a violation of that safety regulation would render the ship unseaworthy, and if such unseaworthiness was the proximate cause of the plaintiff's injury, it would render the defendant shipowner liable. *Venable v. A/S Det Forenede Dampskibsselskab, supra; Grigsby v. Coastal Marine Serv. of Texas, Inc.*, 412 F.2d

1011 (5th Cir. 1969); *Manning v. M/V "Sea Road"*, 417 F.2d 603 (5th Cir. 1969); *Phipps v. The S.S. Santa Maria,* 418 F.2d 615 (5th Cir. 1969).

■ We do not agree with defendant's contention that the instructions given do not deviate from the standards set forth in the regulation and therefore, the error, if any, was cured by instructions 9 and 11. The regulation specifically requires that the ladder be *"suitably secured against shifting and slipping"* (italics ours), the exact cause of the injury which may be inferred from plaintiff's evidence. The instructions are general in their nature. Instruction 9 provides that the ladder be "properly secured". Instruction 11 provides that the ladder be "reasonably suitable and fit to be used for the purpose or use for which provided".

The plaintiff was entitled to have his theory of the case presented to the jury by proper instructions. Since there was substantial evidence to support the giving of the specific standards of the regulation, a general statement of the law will not deprive the plaintiff of his right to have the specific standards presented to the jury. *See Dabroe v. Rhodes Co.,* 64 Wn.2d 431, 392 P.2d 317 (1964), and cases cited therein.

We believe that it would have been better to state the manner in which the safety regulation should be considered by the jury in the safety regulation instruction, but in construing the regulation with either instruction 9 or 11 the purpose would be apparent. The jury was correctly instructed that they should not single out any particular instruction and place undue emphasis upon it, and that they should consider the instructions as a whole. On retrial, however, the safety regulation instruction should be given as indicated in this opinion and we recommend that it be consolidated in a single instruction with other general principles included in instructions 9 and 11 to avoid needless repetition.

The next issue we will consider is plaintiff's contention that defendant's barge was unseaworthy as a matter of law. Neither side excepted nor assigned error to the court's defi-

nition of unseaworthiness which was set forth in instruction 13,[2] and therefore it became the law of the case. We believe that our prior discussion of this case clearly demonstrates that reasonable minds could differ on the evidence presented to us on the issue of unseaworthiness.

We shall not discuss the injection of insurance into this case because we believe that it was inadvertent and it would be highly unlikely to occur in the next trial.

The judgment will be reversed and a new trial granted.

PETRIE, J., concurs.

PEARSON, J. (dissenting)—I dissent from the conclusion of the majority, that failure to instruct the jury on the federal regulation constituted prejudicial error. It should be pointed out that the safety regulations were not offered

---

[2]
"INSTRUCTION No. 13

"Under the Maritime law, every shipowner or operator owes to every longshoreman employed aboard a vessel the duty to keep and maintain the ship, stowage and appurtenances in a seaworthy condition at all times. To be in a seaworthy condition means to be in a condition reasonably suitable and fit to be used for the purpose or use for which provided or intended. By 'seaworthy' I mean a barge which is not necessarily accident-free nor designed or fitted for every possible peril, but only one that is reasonably fit considering her range and uses. It was not necessary that the barge in question meet a standard of perfection in order to be seaworthy; it was only necessary that the vessel and its appurtenances be reasonably safe for the purpose for which they were being used.

"Liability for an unseaworthy condition does not in any way depend upon negligence or fault or blame. That is to say, the shipowner or operator is liable for all injuries and consequent damage proximately caused by an unseaworthy condition existing at any time even though the owner or the operator may have exercised due care under the circumstances and may have had no notice or knowledge of the unseaworthy condition which proximately caused the damage.

"Furthermore, the duty to keep and maintain the ship, stowage and appurtenances in a seaworthy condition is not any less with respect to an unseaworthy condition which may be only temporary, or which may have been in existence only a very short period of time. If the condition of the ship in this case was unseaworthy, as I have defined that term for you, the shipowner or operator is liable for all injuries and consequent damage proximately caused by such condition, regardless of the length of time such condition may have existed."

as an exhibit during the trial, although had they been offered, the cases of *Provenza v. American Export Lines, Inc.*, 324 F.2d 660 (4th Cir. 1963) and *Venable v. A/S Det Forenede Dampskibsselskab*, 399 F.2d 347 (4th Cir. 1968) would certainly have required their admission. The matter of the safety regulations was brought up after both parties had rested, when plaintiff's attorney moved the court to take judicial notice of the regulations. Presumably the only reason for the court to take judicial notice of the safety regulations was so that a proper instruction could be prepared and given to the jury. The majority opinion is correct in its holding that the court must take judicial notice of federal regulations in an admiralty action, where such regulations are pertinent to the subject matter of the action. *See Provenza.*

However, it is my view that a proposed instruction concerning the federal regulations should inform the jury what the legal effect of violation of the regulations would be. Otherwise, the jury is given the safety regulations in a vacuum. The instruction proposed by the plaintiff stated:

> You are instructed that there are Federal regulations dealing with "Safety and Health Regulations for Longshoring". (29 CFR 1504). Those regulations provide in part as follows: "1504.25 (A). There shall be at least one safe and accessible ladder for each gang working in a hatch . . ."
>
> (C) Straight ladders of adequate strength and suitably secured against shifting or slipping shall be provided as necessary where fixed hold ladders do not meet the requirements of Paragraph (A) of this section.

No other proposed instruction or any given instruction referred to the federal safety regulations or to the legal effect of a failure to adhere to the standards prescribed. Assuming that *Venable* holds that a violation of a safety regulation renders a vessel unseaworthy, the jury was not, by the proposed instruction, informed of the effect of violation. It is my view that to establish prejudicial error on the trial court's refusal to give a proposed instruction, such instruction not only must contain a correct statement of the

law, but it must correctly reflect the theory of liability embodied in its statement of the law. *See Provins v. Bevis,* 70 Wn.2d 131, 422 P.2d 505 (1967). Of course, the effect could be included in a companion instruction, but none was proposed.

The majority opinion relies upon *Dabroe v. Rhodes Co.,* 64 Wn.2d 431, 392 P.2d 317 (1964), which holds that a party is entitled to have his theory presented to the jury by proper instruction when there is evidence to support it, and that a general instruction does not suffice. I believe that rule is being misapplied in this case, where the theory relied upon is not contained in the proposed instruction. I also believe that rule is not applicable where other instructions given by the court adequately instruct on the plaintiff's theory. For these reasons, I do not believe the refusal to give the proposed instruction constituted prejudicial error.

The majority opinion states:

> We believe that it would have been better to state the manner in which the safety regulation should be considered by the jury in the safety regulation instruction, but in construing the regulation with either instruction 9 or 11 the purpose would be apparent.

I agree that the effect of the safety regulation should have been included in the instruction, but I do not agree that instructions 9 or 11 supply the deficiency, since they do not refer to the safety regulations. However, it is my view that instructions 9 and 11 inform the jury precisely what the standard of unseaworthiness is in the case of ladders and those instructions also properly inform the jury of the legal effect of an improperly secured ladder. The majority opinion contends that the requirement in the safety regulation that the ladder be "suitably secured against shifting or slipping" is significantly different than the statement of the rule in instructions 9 and 11. In instruction 9, the court used the words "properly secured" and instruction 11 provided, "A ladder, even though structurally sound, is unseaworthy if it is unsecured aboard the vessel in such a way as

not to be reasonably suitable and fit to be used for the purpose or use for which provided or intended."

The semantics are admittedly different and in some instances such differences might constitute prejudicial error, but with respect to the ladder involved in this case, the sole issue was whether or not the vessel was unseaworthy because of the manner in which it was secured. A "properly secured" ladder will not "shift or slip." The converse is also true. The ladder which "shifts or slips" is not properly secured. The distinction made by the majority seems to me to be without difference.

In my view, the contents of the safety regulations were satisfactorily communicated to the jury by instructions 9 and 11 and the majority is engaging in quibbling with semantics in holding otherwise. Litigants are entitled to a fair trial, not a perfect one. The type of error claimed here does not, in my view, reach the prejudicial character which we normally require in upsetting a jury verdict. Furthermore, the deficiency in the proposed instruction renders the claimed error harmless, if not meaningless.

Therefore, I dissent.

Petition for rehearing denied May 27, 1970.