[No. 41599. En Banc. December 17, 1970.]

JOSEPH E. CRESAP, *Respondent*, v. PACIFIC INLAND NAVIGATION COMPANY, INC., *Appellant*.*

C. Brent Nevin (*Raymond J. Conboy* and *Pozzi, Wilson & Atchison*, of counsel), for appellant.

Robert M. Schaefer, Blair, Schaefer, Hutchison & Wynne (*Nathan J. Heath* and *Gray, Fredrickson & Heath*, of counsel), for respondent.

McGOVERN, J.—Plaintiff appealed from a judgment entered upon a jury verdict for the defendant. The Court of Appeals, by less than a unanimous decision, reversed the trial court (2 Wn. App. 548, 469 P.2d 950 (1970)). Defend-

*Reported in 478 P.2d 223.

ant then prosecuted this appeal under Rule II-2, Supreme Court Rules on Appeal.

Plaintiff's complaint was pleaded in admiralty terms to recover damages for injuries suffered by him during the course of his employment aboard the defendant's grain barge. Plaintiff alleged that the vessel was unseaworthy.

February 8, 1965, Joseph E. Cresap was employed by a master stevedore as a hold man to unload grain from the defendant's barge. Included within his duties was the operation of certain vacuum hoses placed within the hold of the barge to withdraw the grain and deposit it onto a conveyor system located upon the dock. A wooden ladder used by the plaintiff and his fellow longshoremen to enter and leave the holds of the barge was furnished by the master stevedore and was customarily used for that purpose.

Plaintiff testified that he was injured when he fell from the ladder while he was descending from the weather deck of the barge to the deck of a hold. The compartment into which he fell was said to be 10 or 11 feet deep and to have a deck of steel, "shiny, steel, slick". The weather condition at the time was described as "a bit damp". The bottom of the ladder rested upon the steel deck of the hold and the top of the ladder extended approximately a foot above the coaming of the hatch. One end of a $3/8''$ or $5/16''$ line was attached to a top rung of the ladder and the other end was secured to a restraining bit welded onto the weather deck of the barge. There were no rubber footings on the ladder.

The plaintiff described his fall from the ladder:

> As I started down the ladder, I got to a point about where my head was even with the deck of the barge. That is the top of the deck, and all at once the bottom of the ladder went sideways to the right and the weight of me tried to pull it back; the ladder rolled over and I fell off.

There was no eyewitness to the accident, but a longshoreman working with the plaintiff at that time said that he heard a thump and turned around to see plaintiff lying at the foot of the ladder. He said the ladder was "sitting on the angled position . . . tied to the top of the hatch

opening and the lower part of the ladder was loose on the deck and . . . had been shifted over where he [plaintiff] was lying".

The principal assignments of error upon which this appeal is predicated are four in number. First, it is argued that the trial court erred when it allowed the jury to consider the issue of comparative contributory negligence. Plaintiff insists that there was no evidence upon which a finding of contributory negligence could be supported. We find that the record indicates otherwise.

Dr. Clyde B. Hutt, plaintiff's attending physician, testified that he saw the plaintiff at a hospital immediately following the accident. He said that he was then told: "That he [plaintiff] fell from—was sitting on a ladder directing the loading of the hold of a ship and he fell and injured himself". If the jury adopted that testimony as the correct version of the accident, it would have found that plaintiff was using the ladder in a manner other than that for which it was intended to be used. That evidence was sufficient to create a jury question on the issue of comparative contributory negligence.

Plaintiff next assigns error to the refusal of the trial court to take judicial notice of the federal Safety and Health Regulations for Longshoring, 29 C.F.R. § 1504 (1965). Before plaintiff's counsel rested his case, he presented the court with a copy of the regulations as they existed at the time of Mr. Cresap's injury. The court was also advised of the legal authorities in support of plaintiff's proposition and, additionally, was thereafter presented with a proposed instruction for the jury which recited the pertinent parts of the regulations for which judicial notice was sought. Nonetheless, the trial court declined to take judicial notice of the regulations and refused the proposed instruction. We believe that the plaintiff is entitled to a new trial for those reasons.

■ "The contents of the Federal Register shall be judicially noticed . . ." 44 U.S.C. § 1507. We believe that mandate proper, find it to be appropriately observed in a large number of other state courts and hold that it should

have been acknowledged here. And that is particularly true when, as here, the trial court is put in possession of a copy of the regulations being considered in order that it may test the accuracy of the requested instruction against the language of the regulation. With a copy of the regulations before the court, each counsel was afforded a full opportunity to test the relevancy and materiality of those regulations to the case at bar and to request an instruction upon pertinent portions thereof in support of his client's view of the case.

The advent of the Federal Register has made available to the courts an accessible source of indisputable evidence of the federal rules and regulations. Judicial knowledge of those published rules and regulations should be accepted. Certainly Professor Wigmore answered his own question when he asked: "Since the advent of the *Federal Register*, with its strict rules for publication of executive regulations, why may not all such regulations be capable of judicial notice when they are published?" 9 J. Wigmore, Evidence § 2572 (3d 1940), n. 16 at 553. *Also see, Sims v. Southern Bell Tel. & Tel. Co.*, 111 Ga. App. 363, 141 S.E.2d 788 (1965); *Lange v. Nelson-Ryan Flight Serv., Inc.*, 259 Minn. 460, 108 N.W.2d 428 (1961); *Mortenson v. McCredie*, 1 Ill. App. 2d 455, 117 N.E.2d 840 (1954); *De Armas v. Dickerman*, 108 Cal. App. 2d 548, 239 P.2d 65 (1952).

■ Plaintiff's counsel pointed out to the trial court that some of the principles enunciated in *Provenza v. American Export Lines, Inc.*, 324 F.2d 660 (4th Cir. 1963), *cert. denied*, 376 U.S. 952, 11 L. Ed. 2d 971, 84 S. Ct. 970 (1964), are applicable here. In *Provenza*, plaintiff pleaded a violation of the safety regulations promulgated by the Secretary of Labor, but the trial court still refused a requested instruction which would have put before the jury the specific standards within those regulations which were involved in the case. Although plaintiff here did not plead the regulations, he did sufficiently direct the attention of the trial court to them and requested an appropriate instruction under them. As his counsel argued, "it is not in the regulations that it is binding upon the owner . . . but it is

some evidence of the standard of care" and that "the regulations may be shown just like other evidence to indicate that a certain practice is safe or unsafe". The trial court should have taken judicial notice of the regulations and instructed the jury as requested by the plaintiff:

> You are instructed that there are Federal regulations dealing with "Safety and Health Regulations for Longshoring". (29 CFR 1504). Those regulations provide in part as follows: "1504.25 (A). There shall be at least one safe and accessible ladder for each gang working in a hatch . . ."
>
> (C) Straight ladders of adequate strength and suitably secured against shifting or slipping shall be provided as necessary where fixed hold ladders do not meet the requirements of Paragraph (A) of this section.

While evidence of a violation of the regulations is not conclusive evidence of the fact that the ship is unseaworthy, nonetheless it is relevant evidence of such fact. *Vogel v. Alaska S.S. Co.,* 69 Wn.2d 497, 419 P.2d 141 (1966).

Because plaintiff's requested instruction was not given, he was deprived of the right to fully argue his theory of the case to the jury. Without the requested instruction, he was unable to point out to the jury that the ladder, as secured, did not meet the specifications set forth in the Safety and Health Regulations for Longshoring and that such failure to comply constituted evidence of the fact that the barge was unseaworthy. Other instructions given by the trial court were general in nature and were not sufficient for that purpose. *Dabroe v. Rhodes Co.,* 64 Wn.2d 431, 392 P.2d 317 (1964).

Nor was plaintiff's proposed instruction faulty because it failed to state the effect of a violation of the safety regulations. The jury was properly advised that it should consider the instructions as a whole, and these instructions adequately covered that point:

### INSTRUCTION No. 9

The plaintiff contends that the barge owned and operated by the defendant, was unseaworthy in that the ladder on which the plaintiff was attempting to walk on and use was not properly secured and that there was no

means provided to properly secure said ladder. If you find that the plaintiff was descending a ladder and that it was not properly secured and for that reason gave way and caused injury to the plaintiff, and if you further find that this condition constituted unseaworthiness as I have defined that term for you, then your verdict must be for the plaintiff.

INSTRUCTION No. 11

I instruct you that the duty to maintain the barge and its appurtenances in a seaworthy condition extends to ladders used aboard the vessel. A ladder, even though structurally sound, is unseaworthy if it is unsecured aboard the vessel in such a way as not to be reasonably suitable and fit to be used for the purpose or use for which provided or intended.

Plaintiff also argues that the trial court should have found as a matter of law that defendant's barge was unseaworthy. We do not agree. As indicated earlier, there was evidence presented which indicated that the plaintiff had fallen from the ladder while sitting on it, a purpose or use for which the ladder was not intended. Interpreting that evidence in the light most favorable to the defendant, it was incumbent upon the trial court to deny plaintiff's motion for a directed verdict on the issue of unseaworthiness of the barge. See *Moyer v. Clark*, 75 Wn.2d 800, 454 P.2d 374 (1969). The issue was one to be decided by the jury.

The fact that plaintiff's attending physician interjected the question of insurance coverage into the case before the jury is not considered. It is not likely that upon retrial of this cause such an event would again occur.

The judgment of the trial court is reversed and the cause remanded for a new trial.

HUNTER, C. J., FINLEY, ROSELLINI, HAMILTON, and HALE, JJ., and RYAN, J. Pro Tem., concur.

NEILL, J. (dissenting)—I am in accord with the holding that the contents of the "Safety and Health Regulations for Longshoring," which appear in the Federal Register, are to be judicially noticed, and that violation of those regulations is evidence of unseaworthiness, but is not conclusive on the

issue. However, I disagree with the majority's conclusion that the instructions given prejudicially failed to effectuate these points.

Instruction Nos. 9 and 11 adequately advised the jury of the same substantive elements as are contained in the instructions proposed by plaintiff. Those instructions informed the jury of the correct standard of seaworthiness, including ladders, and of the legal effect of an improperly secured ladder. All that is absent from the instructions given, as compared with the requested instructions, is the advice to the jury that federal safety and health regulations set forth these requirements. The majority, in effect, requires a trial court to include this information in instructions. I disagree.

A comparison of the contents of the federal regulations with the elements contained in the instructions given shows virtual identity of substance. The regulation (29 C.F.R. § 1504.25 (1965)) states: "[T]here shall be at least one safe and accessible ladder . . . (c) . . . suitably secured against shifting or slipping . . ." Compare this language with that of instruction Nos. 9 and 11. "If you find . . . a ladder . . . was not properly secured and for that reason gave way . . ." (Instruction No. 9.) ". . . [The] duty to maintain the barge . . . in a seaworthy condition extends to ladders . . . A ladder . . . is unseaworthy if it is unsecured aboard the vessel in such a way as not to be reasonably suitable and fit to be used for the purpose or use for which provided or intended." (Instruction No. 11.)

The better practice is to place the regulations in evidence and thus before the jury in the same manner as other evidence. However, assuming that it is proper to use the judicial notice with instruction procedure, in view of the fact that instruction Nos. 9 and 11 embodied essentially the same elements, I see no basis for treating the failure to give the requested instructions as reversible error. The usual instruction tells the jury what the law is, without adding that the law stated is derived from particular cases in the federal or state reports or from particular sections of

statutes, rules or regulations. *See State v. Sage,* 22 Idaho 489, 126 P. 403 (1912). We pointed out in another context, "The law does not require a trial judge to give reasons for a rule. It is enough if he charges the law." *Cloherty v. Griffiths,* 82 Wash. 634, 637, 144 P. 912 (1914). The only exceptions of consequence are cases where violation of a statute or ordinance renders a party negligent as a matter of law. *E.g., see* WPI 60.01, 70.02 (1967). The fact that such a statute has its own, independent significance and is more than evidence permits the distinction. Absent such independent effect, statute or other source references are not suggested. *E.g., see* WPI 72.01, 72.02 (1967). In this case, as the majority observes, violation of the federal safety regulations does not have such legal effect, but is merely evidence.

Even if I were to concede that citations to sources in jury instructions do no harm, it does not follow that failure to include such source information is reversible error. Reference to statutes or other sources, the violation of which does not have independent legal significance, adds nothing to the substance of the law stated. In such circumstances, I fail to see any error in refusing to include source references in the instructions.

Moreover, I am reluctant to accept as harmless the additions of source references where the statute, rule or regulation has no dispositive effect, as in this case. There is danger inherent in the very nature of such additions. When the source of the law is not significant per se, the only effect of citation is rhetorical. In formal logic the device is known as *argumentum ad verecundiam,* playing upon the prestige of the source. *See* Tammelo, Outlines of Modern Legal Logic 116 (1969). At best, its use in instructions needlessly injects a misleading element into the legal search for truth. At worst, the balance of images created by such additions may be unduly prejudicial to one of the parties. Further, there is the potential danger that the refusal of a trial court to cite some sources while naming others may amount to a comment on the evidence.

I would vacate the opinion of the Court of Appeals and affirm the trial court.

SHARP, J., concurs with NEILL, J.