OPINION
McKEAGUE, Circuit Judge.
Abdulmokne Ghaleb sued American Steamship under the Jones Act, 46 U.S.C. *546 §§ 30101, 30104, for an injury that he says he suffered working aboard its tugboat- and-barge combination, the Ken Boothe/ Lakes Contender (“Boothe/Contender”). As the crew stored those vessels for the winter, Ghaleb’s fellow employees dropped a heavy cable which slid into his heels, knocking him to the ground. At trial, Gha-leb pursued various liability theories based on this cable incident, including a negligence per se claim alleging that the crew’s excessive work hours contributed to the accident. After nine days of trial, a unanimous jury rejected Ghaleb’s claims. Despite this verdict, the district court granted Ghaleb’s motion for judgment as a matter of law on negligence per se. For the following reasons, we REVERSE and REMAND with instructions to enter judgment for American Steamship.
I
In late December 2012, Ghaleb and the rest of the crew aboard the Boothe/Con-tender prepared to store the vessels for the winter in Sturgeon Bay, Wisconsin. As part of the storage process, the crew must separate the barge from the tugboat. Separation from the tug requires the barge to connect to a new onshore power source. To link the barge to onshore power, the crew uses a large electrical cable.
When the Boothe/Contender crew attempted this power transfer, the crew started with the power cable lying across the barge’s deck in a cane-like shape with the cable’s loose end forming a hook that curved toward the shore. This positioning forced the crew to lift the cable’s loose end and then lower it over the barge’s side to an electrician on the dock. The vessels’ Chief Engineer, Peter Warren, directed this lowering maneuver. To help him lift the cable, the Chief selected four crew members: Ghaleb, Mohsen AI-Qasemi, Ab-dulghafor Ahmed, and Ricky Pettaway.
The Chief positioned everyone at various points along the hook-shaped stretch of cable. Ghaleb stood closest to the end, followed next by Ahmed, and then by Al-Qasemi. The Chief positioned himself and Pettaway further back along the cable, nearer to the middle of the deck. Chief 'Warren says that at some point after the team lifted the cable, the crew realized they needed to tie a heaving line to the cable’s loose end. A heavying line is simply a lightweight line that assists in moving heavier lines between locations—here, between the ship’s deck and the shore. So the Chief tasked Ghaleb with retrieving the line, tying one end to the cable, and tossing the line’s other end down to an electrician on the dock.
The parties dispute the details surrounding this lowering maneuver. All agree, however, that Ahmed and Al-Qase-mi dropped the power cable while Ghaleb dealt with the heaving line. Also, everyone is certain that the once the cable fell to the deck, it slid into Ghaleb’s heels and knocked him to the ground. Ghaleb alleges this fall caused him severe injuries.
Ahmed testified that he dropped the cable because he slipped on ice. Al-Qasemi said that he lost his grip because Ahmed dropped the cable. Both testified that when the crew executed the maneuver, thick ice covered the deck. Chief Warren disputed this characterization of the deck’s condition and testified that, despite some thin ice patches, the deck was in good shape due to the large amounts sand and salt that the crew had applied.
Based on this incident, Ghaleb sued American Steamship for negligence, negligence per se, and unseaworthiness. Gha-leb’s negligence theories centered on whether Chief Warren placed Ghaleb in an unsafe position where the cable’s loose end might strike him if dropped—a so-called *547 “danger zone.” He based his negligence per se theory on American Steamship’s alleged violations of a work-hours statute regulating Great Lakes towing vessels. See 46 U.S.C. § 8104(c) (limiting seamen’s workhours to 15 hours in 24 or 36 hours in 72, except in emergencies). At trial, Ghaleb presented testimony and business records to show that he, Ahmed, Al-Qasemi, and Chief Warren all exceeded the statute’s limits.
The jury unanimously found for American Steamship on all counts. So Ghaleb renewed a motion for judgment as a matter of law on every claim. The district court denied Ghaleb’s motion with respect to unseaworthiness and negligence. As to negligence, the court held that “a reasonable jury could have concluded that - Chief Warren did not breach a duty to protect Plaintiff from a foreseeable risk of harm.” Ghaleb v. Am. Steamship Co., No. 13-13822, 2016 WL 28986, at *6 (E.D. Mich. Jan. 4, 2016). It stated that, although Chief Warren directed the cable-lowering maneuver, it was “not evident from the trial testimony that Chief Warren instructed Plaintiff on where to stand when Plaintiff went to throw the heaving line to the dock.” Id. The court also added that despite “testimony that Chief Warren should have realized that Plaintiff was in a danger zone,” a “reasonable jury could have disagreed ... and found that no one was at fault for Plaintiffs injury.” Id. at *7.
On Ghaleb’s negligence per se claim, the district court overruled the jury verdict and awarded judgment to Ghaleb. The court held that a reasonable jury could find only that Ghaleb, Chief Warren, Al-Qasemi, and Ahmed all “worked more than the hours permitted by the statute in the days leading up to Plaintiffs accident.” Id. at 5. The court added that there was “no explanation except for a lack of ‘immediate and wakeful readiness’ for why Plaintiff ... did not extricate himself from the area where he was throwing the heaving line to shore when he recognized he would be hit by the power cable and possibly killed if the other men began moving the cable.” Id. American Steamship now appeals the district'court’s decision to enter judgment notwithstanding the verdict on Ghaleb’s negligence per se claim.
II
This court reviews de novo the district court’s grant of a motion for judgment as a matteh of law. Parker v. Gen. Extrusions, Inc., 491 F.3d 596, 602 (6th Cir. 2007). Judgment as a matter of law is appropriate where “the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the [non-moving] party[.]” Fed. R. Civ. P. 50(a). Thus, a motion should be granted only if “reasonable minds could not come to a conclusion other than one favoring the movant.” Parker, 491 F.3d at 602 (quoting Tisdale v. Fed. Express Corp., 415 F.3d 516, 531 (6th Cir. 2005)).
Under this JMOL standard, we consider the evidence in the light most favorable to the non-movant—here, American Steamship. See id. We do not substitute our judgment for the jury’s by reweighing the evidence or questioning witnesses’ credibility. Id. Instead, we give the non-movant the benefit of all reasonable inferences. See id.
Because the JMOL standard focuses on evidentiary sufficiency, courts have recognized that granting the motion for a party with the burden of persuasion should happen only in “extreme cases.” 9B Wright & Miller, Fed. Prac. & Proc. Civ. § 2535, Judgment as a Matter of Law for Claimant (3d ed.). The court must determine that the “effect of the evidence is not only sufficient to meet [the] burden of proof, but is overwhelming, leaving no room for *548 the jury to draw significant inferences in favor of the other party.” Radtke v. Lifecare Mgmt. Partners, 795 F.3d 159, 165-66 (D.C. Cir. 2015) (quoting Gay v. Petsock, 917 F.2d 768, 771 (3d Cir. 1990)). Stated differently, there must simply be “insufficient evidence for permitting any different finding.” Mihalchak v. Am. Dredging Co., 266 F.2d 875, 877 (3d Cir. 1959). This court has said in the related summary judgment context that a party bearing the burden of persuasion at trial has a “higher” burden and must show “that the evidence is so powerful that no reasonable jury would be free to disbelieve it.” Surles v. Andison, 678 F.3d 452, 455-56 (6th Cir. 2012) (citations and quotation marks omitted). In short, “[i]t is rarely appropriate to grant a directed verdict or judgment n.o.v. in favor of the party having the burden of proof[.]” Radtke, 795 F.3d at 165.
Here, the parties contest just two negligence per se elements: statutory violations and causation. Assuming American Steamship violated the safety statute—a rather safe assumption from the evidence—this case requires us to apply the demanding JMOL standard in conjunction with the Jones Act’s unusually relaxed proximate cause standard. As Ghaleb correctly asserts, the Act lessens his burden on the causation element—he must prove only “that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought.” CSX Transp., Inc. v. McBride, 564 U.S. 685, 692, 131 S.Ct. 2630, 180 L.Ed.2d 637 (2011) (discussing the causation standard under the Federal Employers’ Liability Act which the Jones Act incorporates). But Ghaleb conflates this relaxed causation standard with a relaxed JMOL standard. He asserted multiple times at oral argument that he needed only to show “any evidence” that a violation played a role in his accident to prevail on his JMOL motion. Oral Argument at 27:50-35:40.
To be clear, this is wrong. For Ghaleb to' be entitled to JMOL, he must show that no reasonable jury could find that statutory violations lacked any contributory role in his accident. Because Ghaleb predicates negligence per se liability on work-hours violations, this essentially means that if the jury could find that no sailor’s fatigue played a causal role in his accident, Ghaleb is not entitled to JMOL. Here, the evidence presented on each sailor allowed a reasonable jury to conclude that this was either a faultless accident or an accident unrelated to fatigue.[1]
We look first at Ghaleb. The district court stated that there was “no explanation except for a lack of immediate and wakeful readiness” for why Ghaleb stayed in the cable’s path when throwing the heaving line down to the dock. Ghaleb, No. 13-13822, 2016 WL 28986, at *5 (internal quotation marks omitted). This conclusion merely infers causation from negligence itself. Such reasoning makes sense when counterfactuals prove but-for causation to a near certainty. See Smith v. Trans-World Drilling Co., 772 F.2d 157, 161-62 (5th Cir. 1985) (holding that a company’s negligent failure to install a railing in “the precise spot of [the plaintiffs] fall” established causation as a matter of law). Usually, however, mere negligence alone does *549 not require any finding on causation. See Wilkins v. Am. Exp. Isbrandtsen Lines, Inc., 446 F.2d 480, 484 (2d Cir. 1971) (holding that when a seaman’s heart attack followed excessive work hours, no burden-shifting causation rule applied because a “justifiable inference is not a synonym for a presumption”). And no evidence related to this lowering maneuver would force a reasonable jury to conclude only that Gha-leb’s fatigue contributed to his accident.
To start, a jury could find Ghaleb acted as a reasonable, wakeful person would. The district court itself stated that the jury could have reasonably concluded that “no one was at fault” for the accident. Ghaleb, 2016 WL 28986, at *7. Presumably, this could include Ghaleb too. And in fact, Ghaleb touted testimony by Chief Warren that Ghaleb “did nothing wrong” during the rope maneuver. Renewed Mot. for JMOL at 7, R. 79, PID 1363. Ghaleb directs us to no “overwhelming evidence” which only permits a jury to find that something he did contributed to the accident.
Moreover, even if the jury believed that Ghaleb put himself at risk, it did not need to accept that he did so due to fatigue. On this front, the district court provided unsatisfactory reasoning to find causation as a matter of law. Unlike a hypothetical safety railing, the court lacked a concrete, realistic way to insert a “wakeful and ready” Ghaleb into this situation. Per Chief Warren’s testimony, Ghaleb left his position holding the cable to affix a heaving line to the cable while the others held up the cable. The jury could have reasonably found that even an alert Ghaleb who knew his colleagues had already hoisted the heavy cable off the deck would still have quickly affixed the heaving line without stopping and restarting the maneuver. That is, the jury could have considered Ghaleb’s decision something a rested sailor would do. Certainly, the jury could reasonably have found that Ghaleb exercised poor judgment and then attributed the poor judgment to fatigue. His actions and decisions lacked any definitive characteristic, however, that requires one to infer a causal connection to fatigue.
Further, the district court’s decision to find a causal relationship as a matter of law is particularly troubling given that Ghaleb never asserted that his behavior led to the accident—still less that he made any mistake because of fatigue. See Scoran v. Overseas Shipholding Grp., Inc., 703 F.Supp.2d 437, 454 (S.D.N.Y. 2010) (holding that causation could not be found as a matter of law, in part, because “Plaintiff did not testify at his accident that fatigue actually caused his injuries”). Essentially, the district court fashioned a theory for Ghaleb entirely on its own. Undoubtedly, it was a plausible theory. But the evidence did not demand only the district court’s conclusion. The court inferred causation from the facts in a manner inconsistent with the requirement that it view the evidence in the light most favorable to American Steamship. And in doing so, the court ignored the burden of persuasion. American Steamship, contrary to Ghaleb’s contentions, never had to explain why Ghaleb stayed put.[2] Whether the jury *550 believed Ghaleb made a mistake unaided by fatigue or acted prudently, either conclusion was reasonable.
The jury could also have reasonably concluded the other crew members’ fatigue played no part in the accident. Although the district court found Chief Warren worked excessive hours, it never linked his actions to Ghaleb’s injury in its analysis. On appeal, Ghaleb reasserts his theories about Chief Warren’s negligent supervision; now, he chalks the Chiefs supposed errors up to poor judgment induced by fatigue. But the jury’s negligence verdict shows it found Chief Warren faultless. As the district court recognized in denying Ghaleb’s JMOL motion on negligence, Ghaleb “testified that Chief Warren told him to ‘throw the line, that’s it.’ ” Ghaleb, No. 13-13822, 2016 WL 28986, at *6. And when asked whether Chief Warren told him what to do, Ghaleb said, “I know what I do.” Id. Given that the evidence permitted a finding that Chief Warren lacked any fault in Ghaleb’s accident, it did not demand an inference that his fatigue contributed to Ghaleb’s accident.
The district court also found causation by crediting Al-Qasemi’s testimony that he never complained about the icy conditions on the deck because he worked too many hours. Ghaleb extends this failure-to-warn theory to Ahmed as well. It seems improbable that when the jury considered—and rejected—a general negligence theory that it never contemplated the deck’s conditions. And Chief Warren testified that conditions were generally good. If the jury believed the Chief, as it .was free to do, then neither .Al-Qasemi nor Ahmed—tired or rested—would have complained. On this point, the district court erred in weighing Ahmed or Al-Qasemi’s post-hoc testimony against Chief Warren’s testimony. A jury could find both accounts contrived, but ultimately the jury was at liberty to choose who it believed. See Scoran, 703 F.Supp.2d at 454 (holding that causation could not be found as a matter of law, in part, because the plaintiff never complained about fatigue on the day of his accident). If the jury found Chief Warren credible, it could also have concluded Ahmed had a chance slip on ice on an otherwise clean deck. This slip and the accompanying cable drop need not result from anyone’s carelessness— much less them fatigue-induced carelessness.
The dissent disagrees. It would find that fatigue contributed to the accident as a matter of law. It reasons from an uncon-testable premise: fatigue can affect a sail- or’s performance. It then concludes that a reasonable jury was required to find that fatigue actually contributed to Ahmed slipping or the sailors dropping the cable.
Fatigue could hypothetically contribute to almost any mishap, however, A plaintiff can always argue that someone might have acted differently if rested. But even when a .plaintiff establishes fatigue’s presence as a matter of law, JMOL does not necessarily follow. Whether Ghaleb established fatigue’s role in his accident as a matter of law comes down to a counterfactual: could a rested sailor have slipped or dropped a cable? Because he could, Ghaleb had the *551 burden to convince a jury that fatigue actually contributed to that happening here. Unfortunately for Ghaleb, he failed to do so.
IV
As the dissent makes clear, Ghaleb had a decent case. With some juries, he might have won. But the Jones Act is not a workers’ compensation statute. See Consol. Rail Corp. v. Gottshall, 512 U.S. 532, 543, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994). Ghaleb had two weeks at trial to prove to the jury by a preponderance of the evidence that someone’s fatigue contributed to his accident. After the jury rejected this claim, he bore the burden to show that it could not reasonably come to any different conclusion. Ghaleb failed both times. We REVERSE the district court’s decision granting judgment as a matter of law to Ghaleb and REMAND with instructions to enter judgment for American Steamship.

. At one point during oral argument, Ghaleb was asked whether a reasonable jury could find no causal connection between fatigue and the accident, and he conceded that a jury had "plenty of evidence" to conclude that statutory violations played "no part." Oral Argument 31:00-31:40. We do not consider this admission conclusive, especially given that his briefing contemplates the correct standard. Still, it is somewhat telling because Ghaleb appeared to comprehend the question’s premise—he simply misunderstood in that moment its import.

. Ghaleb argues that the district court erred in not giving his proposed jury instruction on a burden-shifting admiralty rule that might have required American Steamship to disprove causation—the so-called Pennsylvania Rule. Ghaleb never objected to the instruction’s exclusion, however, and the court never made a definitive ruling on the record against the instruction. Thus, we review its omission for plain error rather than an abuse of discretion. See Fed, R. Civ. P. 51(d)(1)(B), (d)(2). If the court’s failure to instruct on the Rule was an error at all, it was not one that was "plain.” See United States v. Olano, 507 U.S. *550 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (holding that an error must be "clear” or "obvious” under "current law” to qualify for appellate review under Fed. R. Crim. P. 52(b)'s "plain-error” standard). This circuit has never applied The Pennsylvania Rule outside the context of collisions. See In re Buccina, 657 Fed.Appx. 350, 351-52 (6th Cir. 2016) (stating that this court’s previous applications show that the rule applies "only to collisions”). The district court's failure to apply the rule to a personal injury case unrelated to a collision, even if an error, was not one we can call "clear” or "obvious” under "current law.”