

# The Attorney General of Texas

**JIM MATTOX**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

May 28, 1985

Honorable David Cain
Chairman
Committee on Transportation
Texas House of Representatives
P. O. Box 2910
Austin, Texas    78769

Honorable Carlos Valdez
Nueces County Attorney
Courthouse, Room 206
Corpus Christi, Texas    78401

Opinion No. JM-320

Re: Authority of the Texas Parks and Wildlife Department under section 31.073 of the Texas Parks and Wildlife Code, the Water Safety Act, to issue citations to persons using sailboards

Gentlemen:

You seek clarification of the Texas Parks and Wildlife Department's authority to issue citations pursuant to section 31.073 of the Texas Parks and Wildlife Code. Specifically, you wish to know whether the department may issue citations to persons using sailboards who do not have on board a Coast Guard approved lifesaving device.

Section 31.073 of the code provides that

> All canoes, punts, rowboats, sailboats, and rubber rafts when paddled, poled, oared, or wind-blown are exempt from all the required safety equipment except the following:
>
> (1) one Coast Guard approved lifesaving device for each person aboard; and
>
> (2) the lights prescribed for class A vessels in Section 31.064 of this code. (Emphasis added).

Your request requires a determination of whether the legislature intended section 31.073 to include sailboards. If not, then sailboards are exempt from the safety equipment requirements of subchapter C of chapter 31 of the code; no one contends that sailboards are subject to _more_ stringent safety equipment regulations than those applicable to sailboats. Therefore, we need not directly determine whether a sailboard is a "vessel" under section 31.003.

The fundamental rule governing the interpretation of statutes is to give effect to the intention of the legislature. City of Sherman v. Public Utility Commission, 643 S.W.2d 681, 684 (Tex. 1983). To determine the legislature's intent and the purpose for a particular provision, it is proper to consider the history of the subject matter involved, the problem to be remedied, and the ultimate purposes to be accomplished. Id. The construction of the scope and meaning of the law by administrative agencies and officers should be considered, but is not binding on courts. Big Lake Oil Co. v. Reagan County, 217 S.W.2d 171, 173 (Tex. Civ. App. - El Paso 1948, writ ref'd).

In this instance, the Texas Parks and Wildlife Department, citing Webster's New Collegiate Dictionary, contends that sailboards are "sailboats." This dictionary definition of sailboards is "a small flat sailboat. . . ." Webster's New Collegiate Dictionary 1037 (9th ed. 1983). In contrast, the Texas Secretary of State registered a particular sailboard under class 28, the "toys and sporting goods" classification, rather than under class 12, the classification which includes sailboats. When statutory terms are not defined in the applicable statutes, they must be given their ordinary and popular meaning. See, e.g., Sanford v. State, 492 S.W.2d 581 (Tex. Crim. App. 1973). Nevertheless, the term "sailboat" must be interperted in the context of section 31.073.

The Texas Parks and Wildlife Department maintains that exempting sailboards from having on board a personal flotation device will result in loss of life. Consequently, numerous citations have been issued by the peace officers charged with enforcement of the act. With regard to the maxim of deferring to "agency expertise," it is significant that persons charged with enforcing this provision include "[a]ll peace officers of this state and its political subdivisions and game management officers." Tex. Parks & Wildlife Code §31.121(a). The cases which generated the rule of deference to an agency's determination usually involve a specialized regulatory scheme with enforcement by officials who are trained in the specific matter of regulation, rather than in general law enforcement. Further, most of the cases involved statutes stating that agency action is committed to agency discretion by law. See Adamo Wrecking Co. v. United States, 434 U.S. 275 (1978); Johnson v. Robison, 415 U.S. 361 (1974); Abbott Laboratories v. Gardner, 387 U.S. 136 (1967); see generally B. Schwartz, Administrative Law §147 (1976).

Moreover, the trial courts in Texas have had occasion to rule on the matter. The decision of the courts outweighs agency interpretation. Convictions occurring in the justice courts are appealed to county courts, where they are tried de novo. The few convictions which have been appealed have been overturned. See, e.g., State of Texas v. Brannan, Cause No. 210-637, County Court at Law No. 3, Travis County, Texas (June 30, 1982) (defendant acquitted: court ruled that windsurfer is not a "sailboat" under section 31.073).

The existence of this controversy and the physical nature of sailboards demonstrate that it is not at all clear that the legislature intended "sailboat" in section 31.073 to include sailboards. The overall purpose of chapter 31 of the code is to promote recreational water safety for persons and property in connection with the use of all recreational water facilities in the state. See §31.002. The purpose of the requirement in section 31.073 of an approved lifesaving device is to protect against loss of life from drowning. It is also significant that the reason for enacting section 31.073 in the first place was a recognition that some water vessels should be exempt from all the safety equipment requirements except for the two items specified in section 31.073. The legislature singled out certain vessels which, because of their physical characteristics, deserved different treatment.

The question before us is not one of pure law, and this office cannot resolve disputed factual issues in the opinion process. Nevertheless, certain facts are subject to judicial notice. For example, a hypothetical determination that the term "motor vehicle" in a statute dealing with safety belts was not intended to include motorcycles could be decided on the basis of judicially noticed facts about motorcycles and safety belts. As will be seen, the facts before us demonstrate that the sailboard is clearly different from the type of water vessel listed in section 31.073. Moreover, facts about the nature of a sailboard indicate that the overall purpose of chapter 31 of the code would not be enhanced by interpreting "sailboat" in section 31.073 to include sailboards. Accordingly, we conclude that a sailboard is not a "sailboat" for purposes of section 31.073.

The factual data upon which our opinion relies stems from findings reported in the Federal Register. The description to follow of a boardsail, and the safety factors involved were all mentioned in proposed rulemaking notice. Significant data also appears in the original findings with regard to the 1973 Coast Guard Exemption. Although the exemption was withdrawn, it was not withdrawn because the facts had changed; rather, it was withdrawn because no need was seen for federal regulation. The factual findings remained the same. We note that "[t]he contents of the Federal Register shall be judicially noticed. . . ." (Emphasis added). 44 U.S.C. §1507. This provision applies to state courts. See Cresap v. Pacific Inland Navigation Co., Inc., 478 P.2d 223 (Wash. 1970).

The facts before us indicate that a sailboard, known by many persons as a "windsurfer," differs from the commonly accepted concept of a sailboat in a variety of ways. See 46 Fed. Reg. 42288-89 (1981). A sailboard is basically a surfboard with a detachable mast and sail. See Id. The mast and sail of a sailboard comprise a freesail unit which is attached by a swivel universal joint and is not supported by stays. See 45 Fed. Reg. 47877 (1980) "freesail system," as the name suggests, will drop in the water when the operator releases it. See Id. Consequently, the sailboard does not "sail" unless the operator

is standing on the board ard holding up the freesail system. See Id. If the operator falls off the sailboard, the board loses its propulsion mechanism while the sail fills with water and acts as a sea anchor. See Id.

Thus, a sailboard does not have the characteristics of a sailboat which create the safety hazard that the life preserver required by section 31.073 was intended by the legislature to remedy. Unlike a sailboat, a sailboard cannot sail away when its operator falls off. Further, because the board itself is filled with a closed cell foam, it cannot sink, even if broken apart. In fact, a sailboard itself functions as a personal flotation device. See 45 Fed. Reg. 47876 (1980) (proposed July 17, 1980); see also 33 C.F.R. §175.23 (1984) (compare sailboard with type IV personal floatation device). Moreover, sailboarding is a water sport, such as surfing or water skiing, in which the enthusiast is physically and emotionally prepared to be in the water -- at least some of the time. 45 Fed. Reg. at 47877 (1980).

As a practical matter, there is no place to secure a lifesaving device "on board." As with the hypothetical of whether a motorcycle should be required to have a seatbelt within the meaning of a statute which requires seatbelts in all motor vehicles, this could bring about absurd results. If the sailboarder is required to wear a life preserver to comply with the law a greater safety hazard could result. See Id. at 47877. At the very least, the activity required to operate a sailboard would be handicapped by wearing a lifepreserver. Id. Windsurfing enthusiasts maintain that, in the surf, wearing a lifepreserver would likely prevent a fallen sailboarder from being able to dive below the waves to escape being battered by the force of the waves and by his falling equipment. Id.

The unique characteristics of sailboards led the United States Coast Guard to determine recently "that sailboards should not be subject to Federal regulation." 46 Fed. Reg. at 42289. When sailboards first appeared about ten years ago, the Coast Guard granted an exemption to Windsurfing International, Inc., from the federal requirement that sailing vessels have a personal flotation device on board for each person aboard. In re Petition of Exemption issued to Windsurfer International, Inc. for an Exemption from Section 175.15 of Title 33, Code of Federal Regulations. CGD 73-29, Feb. 18, 1973. The Coast Guard has now withdrawn the exemption and determined that "there was never a clearly established need for its involvement. . . ." See 46 Fed. Reg. at 42289. Nevertheless, the Coast Guard preserved the opportunity for regulation of sailboards at the state level by exempting states from the federal preemption provision pursuant to 46 U.S.C. sections 1458, 1459 (1982). See 46 Fed. Reg. at 42289. Thus, the state may regulate in the area of the use of safety equipment on sailboards.

The action, or inaction, of the federal government is significant in another way as well. The Coast Guard's inaction emphasizes that sailboards do not at present fall within existing categories of vessels which must comply with the personal floatation device requirements; they must be brought affirmatively into regulatory provisions. See 46 Fed. Reg. at 42289. The situation at hand with regard to section 31.073 is analogous, particularly in light of the fact that sailboards did not exist at the time the provision was originally enacted. If the legislature wishes to regulate sailboards, the federal government will not prevent it from expressly addressing the unique problems presented. We conclude that the provisions of section 31.073 of the Parks and Wildlife Code do not presently cover sailboards. Sailboards present unique problems.

## S U M M A R Y

The Texas Parks and Wildlife Department may not issue citations, pursuant to section 31.073 of the Texas Parks and Wildlife Code, to persons using sailboards who do not have on board a Coast Guard approved lifesaving device.

Very truly yours

JIM MATTOX
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

ROBERT GRAY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jennifer Riggs
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Jon Bible
Susan Garrison
Tony Guillory
Jim Moellinger
Jennifer Riggs
Nancy Sutton