# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | No. 69806-1-I |
| JULIE DAVIS, | ) | |
| | ) | DIVISION ONE |
| Respondent, | ) | |
| | ) | UNPUBLISHED OPINION |
| and | ) | |
| | ) | |
| PAUL DAVIS, | ) | |
| | ) | |
| Appellant. | ) | FILED: March 31, 2014 |

GROSSE, J. — When, as here, the trial court used the Internet to verify state licensing requirements for public accountants as codified in the Washington Administrative Code and did so at trial such that the parties had an opportunity to be heard, the court properly took judicial notice of such state requirements. Accordingly, we affirm.

## FACTS

Julie and Paul Davis[1] were married on May 30, 1992, and separated on September 12, 2009. They have two children, A.D. and S.D., ages 17 and 11 at the time of trial. The petition for separation was later converted to a petition for dissolution.

Julie has a dual degree in accounting and business from Western Washington University. When the parties first married, she worked for the Municipality of Metropolitan Seattle doing accounting work, but she has never

---

[1] The parties will be referred to by their first names to avoid confusion.

been certified as a public accountant (CPA). After their first child was born in 1996, Julie stopped working outside of the home.

After filing the petition for legal separation, Julie began to look for work after being a stay at home mother for more than 13 years. When she tried to pursue employment in the accounting field, she found that she was no longer qualified to perform the type of work that was required in that field. After determining her accounting skills were no longer marketable she decided to make a career change and obtain a degree in special education. This decision was in part the result of her experience with her daughter's disabilities. By the time of trial, Julie had started classes and planned to graduate in 2014, this spring. She anticipated that she could earn $35,000.00 her first year as a full-time teacher.

Paul has worked for Hubbell Power Systems since 2001 or 2002. By 2011, he earned $190,839.00 serving as regional vice president for eight years. While the dissolution action was pending, he resigned from this position, deciding it was more beneficial to his health and well being to change positions. He then became a territory manager and took a pay cut, reducing his salary to approximately $165,000.00.

The parties proceeded to trial on the financial issues of property distribution and family support. Paul contended that by pursuing a career in special education rather than accounting, Julie was unfairly burdening him with support she could provide as a CPA. Julie testified that it was not practical for her to pursue a CPA certification because it would require more recent

2

supervised experience in the field, which she did not have. She testified that she checked on the requirements with the agency that administers the certifications but could not recall whether the amount of experience required was a year, a year and a half, or two years. Paul countered that there was no such experience requirement.

The court then stated that it was taking judicial notice of the experience required by the Washington State Board of Accountancy to apply for a CPA license. The trial court obtained this information from a web site maintained by the Washington State Board of Accountancy and noted that an applicant for a CPA must have 12 months or a total minimum of 2,000 hours of public accounting experience in a work environment no more than eight years before applying for certification. The court rejected Paul's claim that Julie could promptly acquire a CPA license in the near future, finding that it was unreasonable for her to pursue her CPA license given her lack of employment history and the other state requirements for the license.

The trial court ordered Paul to pay Julie monthly spousal maintenance of $3,500.00 until September 2014, which would be when she could pursue full-time employment as a special education teacher. The court further ordered that if Julie had not found full-time employment by that date, Paul was to pay her reduced maintenance of $1,750.00 per month for an additional year or until she obtains a full-time job, whichever came first.

The trial court also ordered Paul to pay monthly child support of $1,502.14 for both children. Child support was calculated using a monthly net income for

Paul of $7,052.00 (the amount after the maintenance payment), and a monthly net income for Julie of $3,864.08, which includes maintenance and imputed income of $784.00. The imputed income amount represented minimum wage earnings at half time, since Julie was a full-time student.

The trial court largely adopted Julie's proposed property distribution, awarding her 55 percent of the marital estate, including 70 percent of the proceeds from the sale of the family home. The trial court ordered that the house be sold at the end of spring 2015 to allow Julie and the younger son to remain in the family home until he graduated from middle school. Until the house was sold, Paul was ordered to pay $500.00 of the $1,458.00 monthly mortgage payment, plus the real property taxes, for which he would be reimbursed at closing. Julie was ordered to pay all other expenses for the house. Paul appeals.

## ANALYSIS

Paul contends that by searching the Internet for information about state requirements for CPA certification to support Julie's position, the trial court independently investigated and testified to facts in violation of ER 605, due process, and the appearance of fairness doctrine. Julie contends that the trial court did not investigate or testify as a fact witness, but properly took judicial notice of the CPA requirements as set forth in the Washington Administrative Code (WAC). We agree.

4

"It is the general rule that public statutes of Washington State will be judicially noticed by all courts of this state."[2] RCW 34.05.210(9) provides that judicial notice shall be taken of rules filed and published by agencies as provided by chapter 34.05 RCW, the Administrative Procedure Act (APA). RCW 18.04.055 authorizes the Washington State Board of Accountancy to adopt rules under the APA, including "[r]ules specifying the experience requirements in order to qualify for a license."[3] The regulations addressing CPA licensure requirements are set forth in WAC 4-30-070, which provides in relevant part:

> (2) Employment experience should demonstrate that it occurred in a work environment and included tasks sufficient to have provided an opportunity to obtain the competencies defined by subsection (3) of this section and:
>
>> (a) Covered a minimum twelve-month period (this time period does not need to be consecutive);
>>
>> (b) Consisted of a minimum of two thousand hours;
>>
>> (c) Provided the opportunity to utilize the skills generally used in business and accounting and auditing including, but not limited to, accounting for transactions, budgeting, data analysis, internal auditing, preparation of reports to taxing authorities, controllership functions, financial analysis, performance auditing and similar skills;
>>
>> (d) Be verified by a licensed CPA as meeting the requirements identified in subsection (5) of this section; and
>>
>> (e) Be obtained no more than eight years prior to the date the board receives your complete license application.

Here, to counter Julie's claim that she lacked the necessary experience to obtain a CPA license, Paul provided a document that was a print out from a web

---

[2] Gross v. City of Lynnwood, 90 Wn.2d 395, 397, 583 P.2d 1197 (1978).
[3] RCW 18.04.055(11).

site that listed the requirements for a CPA license and did not mention having a certain amount of experience. When Julie's lawyer proceeded to voir dire Paul about the document, he could not determine whether it came from the state licensing board web site. At this point, the trial court interjected as follows:

> THE COURT: Let me interject. I have gone to the website and I can take judicial notice without admitting of that which contained [sic] on the website. It says accounting EDU dot org. That's a general website. You can click on State of Washington and then it says steps to become an accountant in Washington. But there is a separate website for which I can also take judicial notice that is maintained by the Washington State Board of Accountancy that has a Washington dot gov address and it states the experience requirements for a CPA in Washington and those requirements differ somewhat from this general site that is not maintained by the State of Washington.

The court then asked Paul if he looked at the web site for the Washington State Board of Accountancy, and when he could not provide a definitive answer, the following exchange occurred:

> THE COURT: Well, the Washington Board of Accountancy website, and I can print this out if anyone wants to see it, but it does say that among the requirements for CPA there is experience that must be obtained through the practice of public accounting, et cetera. Employment experience must be demonstrated occurred [sic] in a work environment. Included tasks sufficient to provide an opportunity to obtain the competency and total at a minimum of 12 months, total minimum of 2,000 hours, um, and there is [sic] other requirements here. Um, and all of this has to have been obtained no more than eight years prior to that the board receiving the application. Is any of that listed on here?
>
> THE WITNESS [PAUL]: No, sir.

The trial court's description of the experience requirements for a CPA license was consistent with the regulations setting forth the experience requirements for a CPA license. Accordingly, the trial court properly took judicial

6

notice of these requirements as published regulations. Indeed, as Julie points out, the court had a duty to take judicial notice of these regulations.[4] The information provided by Paul was not obtained from the official Washington State Board of Accountancy web site and the court sought to verify the legal requirements by checking the official board web site. This would be no different than a party providing a summary of a statute and the court looking up the actual statute to determine what the statute actually provided. The court did not, as Paul suggests, search for additional evidence, but simply verified certification requirements of which it had authority to take judicial notice.

Nor was Paul deprived of an opportunity to be heard on the issue, as he contends. Indeed as quoted above, the court identified the web site, asked Paul if he had looked at the web site, and even offered to print out the relevant provisions. The court again gave Paul an opportunity to contest the requirements.

Paul's further contention that the court's actions were a result of bias is without basis. The parties both acknowledge that the trial court disclosed early on that he was acquainted with Julie's lawyer, having played in a band together. At that time, Paul agreed that the trial court could impartially preside over the case. Paul may not now complain of bias after obtaining an unfavorable ruling at trial.[5]

---

[4] See Cresap v. Pacific Inland Nav. Co., 78 Wn.2d 563, 565-66, 478 P.2d 223 (1970) (error for court to decline to take judicial notice of safety and health regulations for longshoring).

[5] See Buckley v. Snapper Power Equip. Co., 61 Wn. App. 932, 939, 813 P.2d 125, rev. denied, 118 Wn.2d 1002 (1991) (a litigant "'may not, after learning

Paul also challenges the court's calculation of Julie's income for purposes of setting child support. "An award of child support is reviewed for an abuse of discretion."[6] Under RCW 26.19.071(6), the trial court must impute income to a parent who is voluntarily unemployed.

Here, Paul proposed that Julie's income be calculated as follows:

> Child support should be set with father's gross income at $13,718.62 per month, and the mother should be imputed part time at minimum wage. Minimum wage is currently $9.04 per hour.

Testimony at trial supported this calculation. Julie testified that she would not be able to hold down a job while going to school full time because of the hourly time commitment required to complete the program, which includes practicum time in a school classroom in addition to the program coursework. Paul also testified that he agreed with the imputed income calculation. The court accepted this calculation as stated in the order of child support:

> The net income of the obligee [Julie] is imputed at $784 because:
>
> > the obligee is voluntarily unemployed.
>
> The amount of imputed income is based on the following information in order of priority. The court has used the first option for which there is information:
>
> Other:
>
> minimum wage at half time earnings as the obligee is a full time student.

---

grounds for disqualification, proceed with the trial until the court rules adversely to him and then claim the judge is disqualified'") (quoting <u>Williams & Mauseth Ins. Brokers, Inc. v. Chapple</u>, 11 Wn. App. 623, 626, 524 P.2d 431 (1974)).
[6] <u>DewBerry v. George</u>, 115 Wn. App. 351, 367, 62 P.3d 525 (2003).

Paul now contends that imputing Julie's income as such was error because she does not satisfy any of the statutory criteria for imputing income at minimum wage and income must be imputed based on full-time employment.[7] Julie argues that Paul invited the error and may not now challenge it.

The record is undisputed that Paul proposed and agreed to this calculation and both parties were represented by counsel. Indeed, the trial court's findings of fact and conclusions of law specifically refer to this agreement.[8] Thus, Paul did invite the error of which he now complains and is now barred from raising it on appeal.[9]

Finally, Paul contends that the property distribution and support awards were not equitable because they unfairly burden him with support obligations. He focuses primarily on the fact that the maintenance award supported Julie's choice to make a complete career change that would not be as lucrative as continuing her career in accounting. He notes that the purpose of maintenance is to support a spouse until he or she becomes self supporting and asserts that Julie could have become self supporting by a much quicker route by returning to the profession for which she was already qualified. He also contends that this allowed Julie to evade her obligation to support the children and pursue her

---

[7] See RCW 26.19.071(6)(d) (income imputed at minimum wage "if the parent has a recent history of minimum wage earnings, is recently coming off public assistance, aged, blind, or disabled assistance benefits, pregnant women assistance benefits, essential needs and housing support, supplemental security income, or disability, has recently been released from incarceration, or is a high school student").

[8] "For purposes of child support, and as agreed to by the parties, . . . [t]he mother shall have income imputed to her at minimum wage, half-time, in the amount of $783.50 mo. gross . . . ."

[9] See State v. Henderson, 114 Wn.2d 867, 870, 792 P.2d 514 (1990).

"passion" while he carried the full burden of family support. He further contends that this choice to reduce her future earnings potential resulted in an inequitable property distribution.

The trial court has broad discretion to divide property and award maintenance in a dissolution action "because it is in the best position to determine what is fair, just, and equitable."[10] The trial court's awards will not be disturbed on appeal absent an abuse of discretion.[11] "'[T]he standard of living of the parties during the marriage and the parties' post dissolution economic condition are paramount concerns when considering maintenance and property awards in dissolution actions.'"[12]

Here, the trial court made the following findings in support of its maintenance order:

> The husband has far greater earning capacity than the wife, which will not change even with the passage of time and the completion of the wife's career path. The husband is paid numerous perquisites for many day to day items that most other people in the work force have to pay for. The husband is thus able to maintain a higher lifestyle than most persons with an equivalent income.
>
> . . . The wife's decision to further her education in a different discipline to become a special education teacher is reasonable under the circumstances and the suggestion that she find a minimum wage job at this time is unreasonable, especially when considered in light of the fact that the husband voluntarily gave up in annual salary an amount nearly as much as the wife hopes to make when she finishes her career path. The wife is not able to sit for a CPA license given her lack of employment history and the Washington State requirements.

---

[10] In re Marriage of Wallace, 111 Wn. App. 697, 707, 45 P.3d 1131 (2002), rev. denied, 148 Wn.2d 1011 (2003).
[11] Wallace, 111 Wn. App. at 707.
[12] In re Marriage of Estes, 84 Wn. App. 586, 593, 929 P.2d 500 (1997) (In re Marriage of Sheffer, 60 Wn. App. 51, 57, 802 P.2d 817 (1990)).

. . . .

. . . The husband is virtually debt-free and the wife has incurred significant post separation debt both by way of consumer credit, attorney's fees and student loans.

. . . The husband has the ability to pay the spousal maintenance as ordered without significant impairment of his lifestyle.

The trial court's findings are supported by the record. Paul fails to show that the trial court's maintenance and property awards were an abuse of discretion.

We affirm and award Julie her attorney fees.

WE CONCUR: